## THE STATE v. RED.

1. **Criminal Law: EVIDENCE: DEFENDANT AS WITNESS.** Where the defendant in a criminal prosecution is a witness in his own behalf, he is subject to the same rules regulating cross-examination and impeachment as other witnesses.

5. ———: **BURDEN OF PROOF: ALIBI.** An instruction charging the jury that the burden of proof to establish an alibi was upon the defendant was not erroneous.

3. ———: **EVIDENCE: CONFESSION.** A confession, by one accused of crime, is an admission of the criminal act itself; an admission of other facts, however strongly they may tend to establish his guilt, cannot be considered as a confession. That a defendant charged with murder had stated that certain articles in his possession, and which he was seeking to conceal, were property of the person murdered, was held not to constitute a confession that he committed the murder.

### Appeal from Jasper District Court.

### TUESDAY, MARCH 16.

THE defendant, with Robert Graves, Andrew Smith and Archie Brown, was indicted by the grand jury of Polk county for the murder of Ella Barrett on the 28th day of August, 1874. Upon petition of defendant, the venue of the cause, as to himself, was changed to Jasper county. Upon a trial in that county he was convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for twelve years, and now prosecutes his appeal to this court.

*Bowen & Leavens*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

BECK, J.—I. At the trial before the District Court, the prisoner was a witness in his own behalf. The court held that the rules governing the cross-examination of other witnesses applied to the cross-examination of the prisoner when testifying in his own behalf, and permitted questions to be

asked him intended to lay the foundation for impeachment by contradicting the statements he made in answer thereto. The defendant insists that in this ruling the court below erred.

Our statute provides that, "defendants in all criminal proceedings shall be competent witnesses in their own behalf, but cannot be called as witnesses by the State." Acts Seventeenth General Assembly, Chap. 168, Sec. 1. The same statute, section 2, provides that the rules of evidence prevailing in civil actions as prescribed by the Code, are applicable to criminal proceedings, so far as they are not inconsistent with other express provisions upon the subject. There is nothing in the Code or subsequent legislation limiting or changing the rules of evidence pertaining to the cross-examination of witnesses. We know of no reason why a defendant who is a witness in his own behalf should not be subjected to the tests of credibility, of memory and of intelligence which the law has wisely provided by means of cross-examination. Surely the legislature could not have intended that one on trial for a felony is entitled to more credit than another witness, by providing that his testimony shall not be subjected to the ordeal of the cross-examination. The explicit provision of the statute upon this subject renders further discussion of the question unnecessary. Counsel for defendant relies upon Code, section 4238. It is applicable alone to preliminary examinations of persons charged with crime, and, therefore, is not to be considered in this case.

II. The defendant sought to establish an *alibi*. The court instructed the jury that "upon this question the burden of proof is upon the defendant, and before he can, on this ground alone, demand an acquittal, he must show where he was, and that he could not, therefore, have been present at the commission of the offense."

Surely an *alibi* will not be presumed; it must be proved. The burden of proof must rest upon the defendant who seeks to establish it, just as the burden of proving defendant's presence at the place of the crime rests upon the state. Of course

an *alibi* cannot be established except by a preponderance of evidence. No fact can be established by any less evidence. *State v. Northrup*, 48 Iowa, 583; *State v. Hardin et al.*, 46 Iowa, 623; *State v. Vincent*, 24 Iowa, 570.

This rule does not abrogate the doctrine of reasonable doubt. A prisoner cannot be convicted upon a preponderance of evidence. There must exist no reasonable doubt of his guilt, based upon the evidence. But there may be a preponderance of evidence against him and yet a reasonable doubt of his guilt. In such case the jury may acquit. This reasonable doubt may be based upon the whole evidence, or upon the evidence establishing certain essential facts necessary to be established, or upon evidence of facts inconsistent with the prisoner's guilt. The doctrine extends to all the evidence and to each part tending to establish independent facts. If, upon consideration of the whole evidence or any part of it, the reasonable doubt arises as to any essential fact, the jury must acquit.

III. A witness, S. B. Smith, sometimes designated in the record by the name Squire Smith, gave the following testimony:

"I had a conversation with Graves in the presence of Red, in Des Moines, in the rear end of an old building on Second street that used to be Pat Kavanagh's saloon, on an alley; there was a saloon in the front room; we went into the room from a door on the alley; Graves requested me to go in; we went into that room twice; Red was not present the first time, the next time we went in Red was there; all that was said, Graves said: 'Here is these things we want you to take away for us'; he said 'the coroner's jury is in session, and it, is causing a great deal of excitement, and we want you to take these things away where they will be secure and safely kept, because I am coming for them to-morrow, and want to entrust them to you,' and I told him I would do it; he said they were some of the things that belonged to the murdered woman; I asked him what murdered woman, and he said Mrs. Barrett;

I can't be positive whether there was anything said as to who killed her; Graves was doing the talking; he said he was subpœnaed before the coroner's jury and wanted these things away, because there was such an excitement; the things were jewelry (witness shown bracelet, and says) I don't say this is it, but I saw one just like it, and the same answer as to the breast pin, the ear-drops and knife; first saw them in Grand Junction; they were there in my possession, I got them from Graves and Red in that room; they were packed in a paper; I also received a watch, I guess it was a gold watch, am not acquainted with watches, I never carried a watch five minutes in my life; there was a chain attached to the watch, looked like gold; it was a long chain that went around the neck, with a slide, and had a little gold bible and that knife. Red took these things out of his pocket, he gave them to Graves, and Graves chucked them into my grip satchel; I took them to Grand Junction. The next day Andy Smith came up to Grand Junction and Graves and Red sent me a telegram; I answered the telegram in person with the things in Boone with the request of Andy Smith; I got the telegram about 11 o'clock before Smith came, and started for Boone about 12:40, got to Boone about 2 o'clock, met Henry Red and Graves there; there was nothing said more than they wanted the things and had sent for me; they were glad I had answered and done as I agreed to; I had the jewelry in my grip satchel; the first thing we did at Boone was to go into a saloon and get a drink, then we went back into an alley and I delivered the things to them, all but the watch, I left the watch in Grand Junction; they put the things in Red's pocket; they wanted the watch and I told them they couldn't get it; I told them if there was any money to be made out of the watch I wanted to make it myself; I got kind of mad, I wanted to make some money as well as they did; we took another drink; they did not like it about the watch and went off grumbling; I can't recollect that there was anything said about Ella Barrett there. Red and Graves went away on the train that I

came in on, the train stopped there twenty minutes for dinner; I stayed there two or three days and went back to Grand Junction. I kept the watch until Graves was arrested for arson, I read an account of it in the Register. We got the Register at 11:50 and the train left for Des Moines about 1 o'clock. As quick as I read the account of Graves' arrest for arson I jumped on the train with the watch and delivered it to Andy Smith in Des Moines."

Other testimony as to admissions and acts of defendant tended to establish that he had in his possession jewelry answering to the description of like articles which had been in the possession of the murdered woman. Such testimony as to the identity of the jewelry and its possession by defendant is extremely weak and unsatisfactory. It was also shown that defendant made false statements as to the place where he was on the night of the murder. As applicable to this evidence the District Court gave the following instructions:

"8. After it has been shown that a public offense has been committed, free and voluntary confessions of guilt by the party accused are by law presumed to be true, and when distinctly heard and correctly understood, and fully and accurately remembered and clearly proven, they are deserving of the highest credit and greatest weight as evidence of the fact. And in any particular case on trial, the degree of credit and weight to be given to such confession depends upon the degree of distinctness, accuracy and clearness with which they are heard, understood, remembered and proven. But confessions forced from the mind by the flattery of hope or the torture of fear, having about them none of the legally recognized safeguards or assurances of truth, are entitled to no credit, and should be given no weight whatever.

"9. In this case should you find, from the evidence, that the defendant has confessed his guilt, or made statement of the fact tending to show his guilt, you will, in the light of the rules of law laid down in the last instruction, and of all the facts and circumstances of the case, as disclosed by the

testimony, carefully examine such confessions or statements, to see how much if any truth there was in them, and if upon such examination, you find them to have been substantially true, as made by him, you will in arriving at your verdict give to them all the weight to which they are entitled as such, but if you fail to find them to have been true, you will give them no weight whatever, but will entirely disregard them."

We think these instructions are erroneous. The conversation and transactions detailed by witness Smith, while they directly and strongly tend, if true, to establish defendant's guilt, cannot be regarded as a confession of guilt of the crime of murder. Unexplained, the facts and circumstances, if believed, would authorize conviction. But in view of infirmative considerations every word of the evidence may have been true, and yet defendant may not have been guilty of the crime charged in the indictment. He *may* have been guilty of no other or different crime than that of which the witness admits his own guilt, namely, receiving and concealing goods taken from the murdered woman. The fact of his possession of the goods raised a powerful presumption of his guilt of the murder. But his admission of such possession was in no sense a confession of guilt. It will not do to say that one on trial for a felony confesses his guilt by admitting circumstances tending, however strongly, to establish guilt. A confession of guilt is an admission of the criminal act itself, not an admission of a fact or circumstance from which guilt may be inferred. *State v. Glynden*, 51 Iowa, 463. The court, therefore, erred in so directing the jury that they were authorized to regard the testimony of Smith as tending to establish a confession of defendant. The testimony of other witnesses to which we have referred tends to establish nothing like a confession.

The ninth instruction directs the jury that they are to apply the same rules to the statements of facts made by defendant, which tend to show his guilt, as to confessions made by him. Surely it cannot be claimed that such statements are entitled

to the weight of confessions of guilt. The writers upon evidence sometimes designate concealment, disguise, flight, mental emotion, etc., as *indirect confession of guilt*. Wills on Circumstantial Evidence, Sec. 6. These circumstances, as well as the possession of criminative articles, are subject to infirmative considerations which will lessen or remove the probability of guilt. It would be absurd to claim that evidence establishing such facts must be regarded in the same light and of the same weight as the direct confession by the prisoner that he committed the very criminal act with which he is charged. The writers in speaking of indirect confessions, are not to be understood as bringing them within the rule applicable to direct confessions.

IV. Counsel insists that the evidence entirely fails to support the verdict. He maintains that the witness Smith, upon whose evidence the verdict wholly rests, cannot be believed. We are not prepared to say that the jury did not see some redeeming quality about that witness which would entitle his testimony to some degree of credibility. We confess that we have failed to find anything of the kind in the record. He seems to be sunk to the lowest degradation and villainy. It appears from his own testimony that he is a common drunkard. He testifies to his connection with the crime by receiving and concealing the goods of the murdered woman after the robbery, and he declares that he intended to cheat his associates in the crime and was only driven from that purpose by his cowardice. He also informs us in his testimony that he was in jail upon a criminal charge before the trial, from which he was released by a person becoming his bail who is aiding the prosecution of defendant for the purpose of obtaining a reward offered for the conviction of the perpetrator of the murder of Ella Barrett. He further testifies that he had been recently discharged from the penitentiary where he had served a term upon a sentence for felony. And, finally, he confesses in his testimony that in a trial of one of the persons indicted with defendant he committed deliberate perjury.

Of his testimoney in that trial he uses the following language in his evidence in this: "I didn't tell one word of truth before Judge Crane; I didn't aim to; I didn't go with the intention of telling the truth." We think a more abandoned and dangerous villain than he shows himself to be never testified in a court of justice. It is dreadful to know that the liberty of a human being depends upon the testimony of such a witness. We will exercise the presumption that he appeared in a better light in the court below than in this court, and that the jury, therefore, were justified in giving some credence to his testimony. We, therefore, cannot say that the verdict is utterly without the support of evidence.

For the error in the instruction above set out, the judgment of the court below is

REVERSED.