Okey, J.,
dissenting. It is ordained in the present State constitution, as it was, substantially, in our former constitution, that no person shall “ be compelled, in any criminal case, to be a witness against himself.” The same provision, in the same words, is contained in the constitution of the United States, and, indeed, that is but the assertion of a principle of the common law.
At common law, the defendant in a criminal case is not a competent witness; but in capital cases, and perhaps in some others, he is permitted to make a statement to 'the jury in relation to the matters charged. This statement, however, is not *185 made under oath, nor is any cross-examination with respect to it allowed.
The rule of the common law which prevented the prisoner from testifying on his own trial, was supposed to be oppressive; and, soon after the law excluding parties as witnesses in civil cases was changed, a proposition to extend the new rule to criminal cases was considered, and finally, in 1867, adopted (61 Ohio L. 260). This statute, slightly changed, was carried into the Code of 1869 (66 Ohio L. 308, § 110), and from the latter act into the Revised Statutes. In its present form it is as follows: “ On the trial of all indictments, complaints and other proceedings, against a person charged with the commission of an offense, the person so charged shall, at his own request, but not otherwise, be a competent witness; but his neglect or refusal to testify shall not create any presumption against him, nor shall any reference be made to, nor comment be made upon, such neglect or refusal.” Rev. Stats. § 7286. Similar statutes exist in a majority of the states.
On the trial of the prisoner, charged with murder in the first degree, he availed himself of that statutory provision. After he testified, he was cross-examined, and then retired from the witness stand. Subsequently he was recalled by the prosecuting attorney, who made inquiry whether ho had not been indicted for an assault with intent to kill; whether he had not pleaded guilty to an assault and battery, and whether he had not been frequently arrested for assault and battery. He objected, personally, to each of these questions, but the court overruled the objections, and he excepted. The answers he gave tended to show the indictment, plea of guilty, and arrests imputed in the questions. The matter thus obtained had no relation to anything to which the prisoner had testified in his previous examination, or which was involved in the trial. He was convicted of murder in the second degree and sentenced to the penitentiary for life.
The evidence was inadmissible for the reason that the things inquired about were matters of record; and, therefore, the objection, though general, should have been sustained. But I do not place this dissent merely or principally upon that ground. *186 In my judgment the constitutional rights of the accused were invaded by this action of the prosecuting attorney and presiding judge. He was “ compelled to be a witness against himself,” even within the letter of the constitutional provision; but whether within the mere letter or not is immaterial, for “ that which clearly falls within the reason of the prohibition may be regarded as embodied within it.” Walker v. Cincinnati, 21 Ohio St. 53; District Court Case, 34 Ohio St. 440 ; Eichenlaub v. State, 36 Ohio St. 140.
In the opinion of the majority,, it is within the discretion of the court to permit such cross-examination. But that is equivalent to saying that where the judge decides to exercise the power, the decision is final. In theory, a reviewing court will reverse for an abuse of discretion in the court below; in practice, such a thing is almost unknown; and it is agreed, everywhere,- that to justify a court of error in reversing a judgment for such cause, the abuse of power must be flagrant. If the matter is discretionary, it is not probable a case will ever be presented which will justify a court of error in interfering. A cross-examination so manifestly oppressive as to furnish ground of reversal would scarcely aid a prosecution before a-jury. Besides, the judges of this state, who preside at such trials, will not permit such injustice, and it will seldom be found that a prosecuting attorney has been so far misled by his zeal as to attempt such a mode of trial.
We are told, moreover, that the answers were voluntary, and that the prisoner did not claim his privilege. But I deny that the answers were voluntary. The questions were asked by the law officer of the court. The defendant objected to them. The court overruled the objections. This amounted to a command to answer, and manifestly the prisoner so understood it. He first excepted, and then answered, and in this way made all the claim of privilege he was required to make. People v. Crapo, 76 N. Y. 288.
I know it is said that by going upon the stand as a witness, the prisoner waived his constitutional right. But is that true ? Doubtless a prisoner may waive some provisions inserted in the constitution for his benefit. Others he cannot waive. Thus, *187 under our statutes, he may waive a jury, and submit to a trial by the judge, in misdemeanors (Dillingham v. State, 5 Ohio St. 280), but not in felonies. Williams v. State, 12 Ohio St. 622. "Waiver of such right by act of the party is not to be assumed, unless such act clearly and necessarily involves such waiver; and where the act is consistent with a limited or qualified waiver, such waiver should not be held as unlimited or unqualified. The same principle applies in the construction of a statute under which it is claimed such waiver arises. •
It will be seen that the statute above set forth, was enacted for the benefit and protection of persons accused of crime. Such person cannot be called as a witness against his will. Nothing is to be presumed against him by reason of his neglect to testify, and no reference to such neglect can be made by court or counsel. There is no provision that the accused, by taking the stand, shall waive any thing. The implication, as I read the section, is the other way. What is there, in the fact that he has taken the witness stand, which requires-, us to say that he has waived any constitutional right ? Of course, for the purpose of explaining and qualifying his testimony in chief, a fair cross-examination concerning it should be allowed. Indeed, this is essential to the ascertainment of truth, and is a matter of right in the state, and not of discretion in the court. Martin v. Elden, 32 Ohio St. 282. But this is not true as to collateral matters. The extent to which a witness may be cross-examined as to extraneous facts is, I admit, discretionary with the court; but this only relates to matters which may be lawfully elicited by such cross-examination. If evidence of a fact is prohibited by the constitution, a statute, or the common law, the court has no power to admit it either in chief or on cross-examination.
"Where there is cross-examination as to collateral matters,—■ esjDecially where the witness is recalled for such purpose,—he becomes, virtually, as to the extraneous facts, the witness of the p rrty examining, who will be bound by his answers. Coble v. State, 31 Ohio St. 100; Wharton’s Cr. Ev. § 179. Such cross-examination is resorted to, in a case like this, either to show that the prisoner is unworthy of belief, or that he is a person *188 who would probably commit murder. But it is admitted in the opinion of brother Johnson, that for the latter purpose such cross-examination cannot be permitted; and to me it seems equally clear that it cannot be permitted for the first purpose. Perhaps the first question and answer are the most clearly objectionable. An indicted person is presumed to be innocent, and yet it is sought to make the mere fact that a witness has been indicted, an impeachment of his character. The objection, however, is alike fatal as to each of the questions and answers. This clearly appears in People v. Crapo, supra, which is utterly inconsistent with Brandon v. People, 42 N. Y. 265, and overrules it in this respect, as a careful examination of the cases will show. And see People v. Brown, 72 N. Y. 571; Byan v. People, 79 N. Y. 593; Gifford v. People, 87 Ill. 210; Hayward v. People, 96 Ill. 492 ; People v. McGungill, 41 Cal. 429; Fletcher v. State, 49 Ind. 124; State v. Farley, 57 Ind. 331; State v. Beal, 68 Ind. 345; State v. Ryan, 6 Mo. App. 592.
But if it be admitted that, on the authority of Wroe v. State, 20 Ohio St. 460, the cross-examination in this case would have been competent as applied to any other witness, still, in my judgment, it was incompetent as applied to the prisoner. The accused in testifying was in a dual capacity—he was the prisoner on trial and a witness; but by becoming a witness he did not cease to be the defendant, nor was he thereby deprived, by waiver or otherwise, of any constitutional right compatible with such position as a witness. He was entitled to the protection secured to1 him in each relation as far as it could reasonably be afforded to him. As already stated, constitutional provisions ordained for his benefit and protection must be respected as far as possible, in view of the fact that he has become a witness. "What difficulty is there in affording him full protection in a case like this? I submit there is none. It can be done by confining the state to a fair cross-examination with respect to the matters concerning which he testified in chief; and when we consider the nature of the evidence, the defendant’s right to have the cross-examination thus confined seems to be clear.
Ordinarily, when objection is made to testimony, it is suffi *189 cient to show that it might be proper for the consideration of the jury for any purpose. But that is not always so, nor is it true in this case. The effect of the facts so elicited on cross-examination was, not merely to discredit the prisoner as a witness, but to show that his character as a peaceable man was bad, and hence that he was a man who would probably commit murder; and yet he had offered no evidence with respect to his character. “ Good character is certainly no excuse for crime; but it is a circumstance bearing indirectly on the question of the guilt of the accused, which the jury are to consider in ascertaining the truth of the charge.” Harrington v. State, 19 Ohio St. 264, 269. “ And the character he is entitled to prove must be such as would make it unlikely that he would be guilty of the particular crime with which he is charged. . . Thus, to murder, as we have seen, a character for peacefulness may be proved.” Wharton’s Cr. Ev. § 60, note. But “ upon the trial of a criminal cause, the prosecution cannot offer evidence to impeach the general character of the defendant, till he has put it in issue by calling witnesses to prove his general good character.” Griffin v. State, 14 Ohio St. 55, 63. And the evidence which the state may offer in opposition to such proof must be confined to general character. Ib.; Hamilton v State, 34 Ohio St. 82, 86.
Erom these considerations it may be fairly said, I think, that the prisoner was compelled “ to be a witness against himself.” That was the effect of the evidence. And it is no answer to say that for one purpose, that is, to discredit him as a witness, it was competent; for, aside from the fact that it could have no such effect in law or fact, it is the duty of the court to preserve to the prisoner the constitutional inhibition as far as possible; and this, as already stated, may be fairly done by allowing a full cross-examination as to matters detailed in chief, but denying it as to such extraneous matters as were proved in this case. That a fair construction of the constitutional provision requires this course to be pursued, T am fully persuaded.
When we come to consider the position which a defendant on trial for crime really occupies, the reasons already stated for *190 holding the extraneous facts incompetent will be much strengthened. Church, C. J., in People v. Crapo, supra, made some sensible observations in this respect, an extract from which is set forth in the opinion of brother Johnson. Indeed, to every person conversant with the trial of criminal cases, it is quite apparent, that while the presumption of law is that the prisoner is innocent, until he is proved to be guilty, the presumption in point of fact is the other way, and in some cases a prisoner tried on indictment is half convicted before the witnesses are sworn. The principal reason is that experience has shown, everywhere, that the great body of persons indicted by a grand jury, and placed on trial, are guilty. But many so tried are innocent, and hence the wisdom and humanity of the legal presumption, to which the court uniformly directs the attention of the jury. True, the spirit of the statute is, that if the prisoner fail to testify, no presumption shall be made against him on that ground by court or jury; but everybody knows the provision is of very imperfect obligation. In truth, the prisoner in nearly all cases is virtually compelled to take the witness stand, where a refusal to answer is almost equivalent to a confession of guilt; and if, in addition to this severe ordeal, he must testify as to the misfortunes, follies and errors of a life time, perhaps forgotten or foigiven by the public, the statute enacted for his benefit and protection becomes our most oppressive enactment, and we adopt a mode of trial only known in countries where the common law has never prevailed. If in some respects the laws of those countries are superior to our own, it is not in the administration of the penal laws. And there can be no excuse for such course of trial upon the ground that the prosecution has been taken by surprise by the appearance of an unexpected witness. If the accused testifies, of course he may be impeached, like any other witness, with respect to his truth and veracity, and the prosecuting attorney knows that he will probably testify, and hence, oi’dinarily, has opportunity to prepare for his impeachment, if his character for truth is bad.
I am aware that in several states where similar statutes exist, it is assumed that cross-examinations of the character of that *191 disclosed in this case violate no constitutional right of the accused. Cases to that effect are collected in 1 Bishop’s Cr. Pro. (3 ed.) § 1183; Wharton’s Cr. Ev. §§ 432 (n. 4), 435 a; and see State v. Red, 53 Iowa, 69. On the other hand, cases all ready referred to, that is, from the reports in Indiana, Illinois, California, Missouri, and the later cases in New York, support to some extent the views which, after careful examination of the subject, are here stated. In my opinion the motion should be granted.