No. 67,202

STATE OF KANSAS, *Appellee*, v. CORTEZ GREEN, *Appellant*.

(867 P.2d 366)

Opinion filed January 28, 1994.

*Hazel Haupt,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Frank E. Kohl,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals his conviction for second-degree murder, a Class B felony, K.S.A. 21-3402, claiming that the trial court erred in: (1) refusing to find that his statutory and constitutional rights to a speedy trial had been violated; (2) refusing to either compel a codefendant, whose trial had been severed, to testify or to admit the transcript of the codefendant's testimony from his separate trial; (3) excluding hearsay testimony at the motion for new trial; (4) permitting a State's witness to testify as to an out-of-court statement made by defendant; (5) finding defendant's right to a fair trial had not been violated by prosecutorial misconduct; (6) instructing the jury on aiding and abetting; (7) commenting on defendant's silence at sentencing; and (8) failing to comply with K.S.A. 22-3422 when sentencing defendant.

Daniel Evans died by strangulation between 4:00 p.m. September 13 and 7:30 a.m. September 14, 1990, at his house. Evans also suffered blunt trauma to his skull and a cervical vertebra. The blow to the skull was consistent with a heel stomping on the head. The strangulation probably occurred first because there

was little bleeding around the skull trauma. A friend of Evans found the body at Evans' home on the morning of September 14. In the living room, the furniture had been tipped over, and the cushions were thrown about.

Based on information obtained during the investigation, the police suspected Earl and Cortez Green, who were brothers. They obtained a search warrant and searched Earl and Cortez's residence the night of the 14th. In the bedroom the police found a pair of black boots and a Black Bart T-shirt. Witnesses had told police that Earl, on the night of the 13th, had been wearing black boots and a Black Bart T-shirt. There were traces of blood on both the boots and the T-shirt. Blood samples were taken from Earl, Cortez, and the victim. The blood on the boots matched the victim's blood type. The blood on the Black Bart T-shirt matched the blood of both brothers and the victim.

Maresa Lofton gave a statement to the police, and testified at trial, that at a party two days after the killing she overheard Cortez tell Reggie McKinney, "Hey, man, me and my brother killed that old man last night." On cross-examination, defense counsel introduced testimony from the preliminary hearing in which Maresa admitted Cortez could have said that the police suspected he killed someone, not that he did it. Reggie McKinney had informed the police that at the party Cortez said the police thought he and Earl had killed an old man.

Prior to being placed in custody, Cortez told the police that he and Earl had visited Evans about 3 or 4 p.m. on September 13, 1990. While Cortez stayed at Evans' house, Earl went to the store to get some "hot pigskin chips." He and Earl went home around midnight. Cortez and Earl were subsequently charged with the killing of Daniel Evans. Earl and Cortez were tried separately, and each was found guilty of second-degree murder. This court affirmed Earl's conviction in *State v. Green*, 252 Kan. 548, 847 P.2d 1208 (1993).

### STATUTORY AND CONSTITUTIONAL RIGHTS
### TO A SPEEDY TRIAL

Cortez asserts that his constitutional and statutory rights to a speedy trial were violated. Under the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution

Bill of Rights, the accused in a criminal prosecution is guaranteed the right to a speedy trial. In addition to the applicable provisions of the state and federal constitutions, the Kansas Legislature has implemented a statutory limitation, K.S.A. 22-3402, which specifies the time within which an accused must be brought to trial. *State v. Clements*, 244 Kan. 411, 413, 770 P.2d 447 (1989).

K.S.A. 22-3402(1) provides:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

The purpose of K.S.A. 22-3402 is to implement an accused's constitutional right to a speedy trial. It is the State's obligation to insure that an accused is provided a speedy trial, but delays which are the result of the application or fault of the accused, or extended by 22-3402(3)(c) to allow the prosecution to obtain material evidence, are not counted in computing the statutory speedy trial period.

K.S.A. 22-3402(3) provides that the 90-day limitation imposed by K.S.A. 22-3402(1) may be extended if:

"(c) [t]here is material evidence which is unavailable; . . . reasonable efforts have been made to procure such evidence; and . . . there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days. Not more than one continuance may be granted the state on this ground, unless for good cause shown, where the original continuance was for less than ninety (90) days, and the trial is commenced within one hundred twenty (120) days from the original trial date."

Cortez was arraigned December 14, 1990. Trial was originally set for February 25, 1991. On that date, the trial was continued to March 18, 1991. On February 28, 1991, the State filed a motion to extend the time to bring defendant to trial by 30 days because the DNA test results from Life Codes, Inc., would not be available until March 11, 1991. The State's motion for a 30-day continuance to obtain the evidence was granted. On March 27, 1991, the State filed a second motion to extend the time required to bring the defendant to trial because material evidence was not available, this time requesting an extension of 90 days. In its

motion, the prosecution stated that the DNA test results from Cellmark Diagnostics would not be available prior to April 8, 1991, and, in addition, one of the State's witnesses, Dr. James Bridgens, a forensic pathologist, was out of the United States until April 23, 1991. The State's motion for a second continuance was also granted by the court. Cortez's trial commenced on June 24, 1991, within 120 days after the original February 25, 1991, trial setting.

Where material evidence is unavailable and reasonable efforts have been made to procure the evidence, a second continuance ordered by the court is reasonable and proper where the first continuance was for less than 90 days and the trial commenced within 120 days from the trial date on which the first continuance was granted. See *State v. Welch*, 212 Kan. 180, 509 P.2d 1125 (1973). Defendant's trial was commenced within the period allowed by K.S.A. 22-3402(3).

The constitutional right to a speedy trial was analyzed in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). In that case, the United States Supreme Court adopted a four-part balancing test to be applied on a case-by-case basis. The factors to be considered in determining if defendant's right to a speedy trial have been violated are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) prejudice to the defendant. 407 U.S. at 530. The length of the delay is usually the triggering mechanism. Unless there is some delay which is presumptively prejudicial, there is no necessity to inquire into the other factors. See *State v. Smith*, 247 Kan. 455, 459, 799 P.2d 497 (1990); *State v. Rosine*, 233 Kan. 663, 667, 664 P.2d 852 (1983).

Cortez argues that the DNA evidence sought by the State was to prove his presence in the victim's apartment. He points out that he had already admitted to being there that night. In addition, the blood tests conducted by the KBI lab prior to the State's request for a continuance were sufficient to prove the similarity between Evans' blood and the blood on the boots. Cortez claims that the State's continuance to obtain the DNA evidence was not necessary and violated his right to a speedy trial. To support this argument, he relies on *State v. Snodgrass*, 252 Kan. 253, 843 P.2d 720 (1992).

In *Snodgrass*, the defendant claimed that the continuance was necessary because he was not aware of a hospital lab report until a week prior to the request. He asserted that because the blood test performed by the KBI was inconclusive, the DNA test was necessary to show he did not have sex with the victim. The request for a continuance to obtain DNA testing was denied by the trial judge. We noted that K.S.A. 22-3401 allows continuances by either party for good cause. We observed that the granting or denial of a continuance rests in the sound discretion of the trial court and that the ruling of the trial court will not be disturbed on appeal absent a showing of both an abuse of discretion and prejudice to the substantial rights of the defendant. Snodgrass' request came two days prior to the trial and followed a previous continuance granted Snodgrass to obtain an examination for his insanity defense. We noted the trial court had already granted the defendant one continuance on the eve of trial and found that the trial judge had not abused his discretion. 252 Kan. at 264.

Cortez assumes the essence of our affirming the denial of the continuance in *Snodgrass* was that the DNA evidence was not material. Based on that assumption, he asserts the trial court's grant of the continuance to the State in this case was improper and denied him his right to a speedy trial. We disagree with Cortez's analysis of *Snodgrass*. *Snodgrass* had waited until the eve of the trial to seek DNA testing. The testing could have taken from 4 months to 2 years to be completed. The fact Snodgrass had confessed to having sex with the victim indicated the defendant's request for a continuance was an attempt to delay the trial.

When Cortez's trial commenced, the State admitted that because of the expense it would not introduce the DNA test evidence. Cortez renewed his claim that his right to a speedy trial had been denied and now argues the DNA evidence was not material; therefore, the State's requests for continuances were not necessary. We disagree. Cortez was brought to trial within the statutory period. There is no suggestion that the State did not intend to use the DNA evidence at trial or requested the continuances to gain an advantage. The continuances granted to the

State to obtain the evidence did not violate Cortez's statutory or constitutional rights to a speedy trial.

## FAILURE TO COMPEL CODEFENDANT TO TESTIFY

A defendant must be permitted to present a complete defense in a meaningful manner, and exclusion of evidence which is an integral part of a defendant's theory violates the right to a fair trial. However, a defendant's right to call and examine witnesses is not absolute and on occasion will be overridden by "other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973).

Cortez subpoenaed his brother Earl to testify. Earl had testified in his own trial that after he went to a store to get something to eat, he returned home and discovered that Cortez was already home asleep. Earl had denied possessing the shirt with blood on it and claimed it was placed in the bedroom by someone else. Cortez also asserts Earl's testimony would have bolstered the testimony of Artesha Lambert and Anzarita Bixby that they saw Earl alone that night. Cortez contends Earl's testimony in Earl's trial that the brothers were not together the entire evening of the murder, was crucial to his defense against the State's aiding and abetting theory.

The court, outside the presence of the jury, citing the Kansas Benchbook, advised Earl that he had a privilege against being compelled to testify. § III(D)(2), p. 100 of the Benchbook states:

"A codefendant not then on trial may be called by the defendant only if, outside the presence of the jury and in the presence of his or her attorney, the codefendant is advised of and understands the privilege against self-incrimination and is informed there is no compulsion to testify. A record to this effect must be made by the judge."

Relying on the judge's statement, Earl refused to testify. Cortez objected, pointing out that prior to being called as a witness, Earl had previously waived his right not to testify and had testified during his trial for the same offense. Cortez asserted Earl had waived his privilege not to testify. The court ruled that Earl had an "absolute right" to refuse to testify and quashed the subpoena.

Cortez's counsel then requested that the transcript of Earl's testimony from his previous trial be admitted into evidence. The

State argued that at the brothers' request their trials had been separated to avoid conflicting testimony. After being informed that Earl's testimony had not been transcribed, the court denied Cortez's motion to admit the transcript of Earl's testimony into evidence.

K.S.A. 60-425 is the codification of a defendant's Fifth Amendment right not to incriminate himself or herself and permits a witness to assert a privilege against disclosing self-incriminating matter. Cortez claims Earl waived any right to this privilege by testifying at his own trial. Cortez principally relies on *State v. Nott*, 234 Kan. 34, 669 P.2d 660 (1983), to support his claim. In *Nott*, five persons had burglarized a school. Two of the accused pled guilty. The court then ordered that Nott be tried separately from the other two defendants, Whitaker and Kirk. Whitaker and Kirk were tried first. They called Nott as a witness. In the presence of the jury, Nott stated his name and then invoked his Fifth Amendment right against self-incrimination. Whitaker and Kirk were found not guilty. When Nott was tried, he took the stand and gave an alibi. The State attempted to cross-examine Nott regarding his taking the Fifth Amendment at the Whitaker-Kirk trial. The trial judge refused to allow the State to cross-examine Nott about his prior claim in the codefendant's trial because his testimony would incriminate him. Nott was found not guilty. The State reserved the question of whether it should have been allowed to cross-examine Nott as to his prior assertion of his Fifth Amendment rights at his codefendants' trial.

The *Nott* court noted that a defendant has an absolute right to not be called as a witness at his or her trial. It stated that where two defendants are jointly tried, each defendant has a separate absolute right not to be called as a witness, and neither defendant can call the other as a witness in their joint trial absent a waiver of the right by the defendant sought to be called as a witness. If a defendant, called to testify at a separate trial of a codefendant, declines to answer questions on Fifth Amendment grounds and then later takes the stand to give an alibi defense at his or her own trial, the defendant may be cross-examined regarding the prior invocation of the Fifth Amendment and the defendant's refusal to answer questions directly relating to the commission of the crime charged.

The State argues that even though Earl had testified in his own trial, because Earl had not been sentenced, he retained a right to refuse to testify at Cortez's trial. The State asserts that to compel Earl to testify "would be contrary to the holding" of *State v. Crumm*, 232 Kan. 254, 654 P.2d 417 (1982). In *Crumm*, the defendant was charged with murder. At his trial, Crumm called his mother as a witness. The mother had been arrested, questioned, and charged in the same crime, but the charges had been dismissed at the time she was called as a witness. Her attorney informed the trial judge that she would exercise her right not to testify as to anything that would incriminate her. The State, outside the presence of the jury, asked the court to limit Crumm's questions to those which would not cause his mother to invoke her Fifth Amendment rights. The trial court agreed, and Crumm's mother's testimony was limited to Crumm's early life, and no questioning related to the murder occurred.

On appeal, Crumm contended he should have been allowed to question his mother about the murder. After examining the record, the *Crumm* court noted it was readily apparent that the mother had the right, under the Fifth Amendment to the United States Constitution, to refuse to answer questions which would incriminate her. The court held that forcing the mother to invoke her Fifth Amendment rights in front of the jury "would have been improper." 232 Kan. at 257. Forcing a witness to "plead the Fifth" in front of the jury may be " 'high courtroom drama,' " but it is utterly lacking in probative value because it is not subject to cross-examination. 232 Kan. at 259 (quoting *Commonwealth v. Hesketh*, 386 Mass. 153, 157, 434 N.E.2d 1238 [1982]). We disagree with the State's claim that *Crumm* is dispositive. Here, Earl had previously testified in his trial for the same offense. The witness in *Crumm* had not testified or waived her right not to incriminate herself.

In *State v. Longobardi*, 243 Kan. 404, 756 P.2d 1098 (1988), Longobardi and Carey Payne were charged with aggravated robbery and first-degree murder. Carey pled guilty to second-degree murder and aggravated robbery prior to Longobardi's trial on charges arising out of the same set of facts. Pursuant to a plea agreement, Carey testified against Longobardi. Longobardi's first trial ended in a hung jury. At his second trial, Longobardi at-

tempted to call Carey as a witness. Carey invoked the Fifth Amendment. This court first noted the Fifth Amendment, *inter alia*, protects any witness from having to testify to matters that would expose him or her to future criminal liability. At the time of the second trial, Carey had been sentenced, but his time for appeal, rehearing, or sentence modification had not yet expired. 243 Kan. at 407-08.

Carey's attorney advised him to invoke his Fifth Amendment right not to testify. Carey had not filed any appeal or motion for rehearing or sentence modification and did not offer any explanation as to how his testimony could affect such an appeal or hearing. The trial court accepted Carey's assertion of the Fifth Amendment and refused to allow Longobardi to call Carey as a witness. The court did, however, allow Longobardi to introduce into evidence the transcript of Carey's testimony from the first trial. 243 Kan. at 408.

The Fifth Amendment only extends to protect a witness who would incriminate himself or herself. Without discussing Carey's prior testimony in the defendant's first trial, the *Longobardi* court held that once a guilty plea is accepted, sentence is imposed, and the time to appeal has expired, the privilege against self-incrimination no longer exists, citing *State v. Anderson*, 240 Kan. 695, 732 P.2d 732 (1987). Even though the trial court's refusal to allow the witness to testify in Longobardi's case was wrong, it did not deprive the defendant of a fair trial because the court had allowed the transcript of Carey's prior testimony in Longobardi's first trial to be read to the jury. The jury had heard all the evidence that could have been adduced by Carey testifying.

The right of a witness to invoke the Fifth Amendment in subsequent proceedings after having testified in a prior proceeding is also discussed in *State v. Simmons*, 78 Kan. 852, 98 Pac. 277 (1908). Simmons was convicted in his first trial, but this court reversed that conviction and a second trial was held. Simmons had testified on his own behalf at the first trial but decided to not testify at the second trial. The State, over Simmons' objection, introduced the transcribed testimony from the first trial at the second trial. The *Simmons* court noted that where a defendant on trial on a felony charge voluntarily testifies as to his or her connection with the offense charged, and after judgment procures

a new trial, a transcript of the defendant's testimony in the first trial may be introduced in evidence by the State at the defendant's second trial. See 78 Kan. 852, Syl. ¶ 1. This court stated a waiver of the privilege continues at every subsequent stage of proceedings. See 78 Kan. 852, Syl. ¶ 2.

The Fifth Amendment operates only where a witness is asked to incriminate himself or herself; that is, to give testimony which could possibly expose the witness to a criminal charge. *Ullmann v. United States*, 350 U.S. 422, 431, 100 L. Ed. 511, 76 S. Ct. 497, *reh. denied* 351 U.S. 928 (1956). Neither party discusses Kansas' codification of the United States and Kansas constitutional right not to incriminate oneself. Under K.S.A. 60-424, a matter will incriminate a person if it constitutes, or forms an essential part of, or, taken in connection with other matters disclosed, is a basis for a reasonable inference of such a violation of the laws of this state as to subject the person to liability to punishment therefor, unless he or she has become for any reason permanently immune from punishment for such violation. The constitutional prohibition against self-incrimination is broader than this statute's definition.

Subject to K.S.A. 60-423 and K.S.A. 60-437, every natural person has a privilege, which he or she may claim, to refuse to disclose in an action or to a public official of this state or the United States or any other state or any governmental agency or division thereof any matter that will incriminate such person. K.S.A. 60-425. "A person who would otherwise have a privilege to refuse to disclose or to prevent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that such person or any other person while the holder of the privilege has . . . without coercion, or without any trickery, deception, or fraud practiced against him or her, and with knowledge of the privilege, made disclosure of any part of the matter or consented to such a disclosure made by anyone." K.S.A. 60-437. When Earl testified during his trial, he disclosed matters that could be used against him. The disclosures were made with knowledge of the privilege. The trial court erred in refusing to require Earl to testify in Cortez's subsequent trial.

Cortez contends the judge also improperly refused to admit the transcript of Earl's testimony at his (Cortez's) trial. As au-

thority, Cortez cites K.S.A. 1992 Supp. 60-460(c), which provides an exception to the exclusion of hearsay evidence if a witness is unavailable but has testified under oath at an earlier hearing. Because the trial judge ruled Earl could refuse to testify, Earl was unavailable as a witness. The transcript of Earl's prior testimony could have been obtained, or the court reporter could have read his or her notes of the prior testimony to the jury. Earl's prior testimony was admissible, and it was error for the trial judge to refuse to admit the transcript or a readback into evidence.

Although Earl's testimony was admissible, under certain exceptions the refusal to admit admissible evidence does not violate a defendant's right to call .witnesses. Although at common law a person accused of a felony could not, as a matter of right, compel a witness to appear, under the United States Constitution and the Kansas Constitution, a defendant has the right to compel a witness to appear and testify. However, the constitutional right of an accused to compel a witness to testify is not absolute. Errors which do not affirmatively appear to have prejudicially affected the substantial right of a defendant do not require reversal when substantial justice has been done. In determining that a federal constitutional error constitutes harmless error, a court must be able to declare the error had little, if any, likelihood of having changed the result of the trial, and the court must be able to declare such beyond a reasonable doubt. *State v. Peltier*, 249 Kan. 415, Syl. ¶ 5, 819 P.2d 928 (1991).

The trial judge's findings that Earl had a right not to testify at Cortez's trial and that the transcript of Earl's prior testimony was not admissible were incorrect and deprived defendant his constitutional right to call witnesses to testify on his behalf. Did the refusal to allow Earl to testify or admit his prior testimony into evidence deprive Cortez of his right to a fair trial? Earl's testimony was that at some point during the time death could have occurred, the brothers were apart. Earl's testimony would have supported Cortez's testimony.

We have reviewed the record and find that the evidence that Earl would have given was introduced into evidence through the testimony of defendant and other witnesses. We are able to de-

clare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial.

## EXCLUDING HEARSAY AT THE MOTION
## FOR A NEW TRIAL

After his conviction, Cortez moved for a new trial based on newly discovered evidence. The alleged new evidence was that defense counsel, after conclusion of the trial, had been informed by two potential witnesses, Dereck Lofton and Tony Vann, that one of the State's witnesses, Maresa Lofton (Dereck's sister), had been coerced by the State to testify that she overheard Cortez say he had killed someone.

At the hearing on the motion for a new trial, defense counsel informed the judge that he was unable to locate Maresa. Cortez's father was called as a witness and testified that he had attempted to locate both Maresa and Dereck. Defense counsel requested that the judge find that these witnesses were unavailable and allow Cortez's father to testify as to the statements made by Maresa and Dereck to him. The State objected on hearsay grounds.

The judge found that Maresa and Dereck were unavailable as witnesses but requested Cortez's counsel to cite the specific exception to admit the hearsay statements. Cortez's counsel could not cite an exception but noted that the federal rules authorize a court to allow such a statement if the interests of justice dictate. The trial judge refused to allow the hearsay statements into evidence, stating, "Well, Maresa Lofton can be found at any time, I assume that this issue can still be raised at any time." Because there was no evidence to consider, the motion for new trial was denied.

On appeal, Cortez contends that the hearsay was admissible under K.S.A. 1992 Supp. 60-460(j), which allows admission of hearsay declarations against interest that would subject the declarant to criminal liability. Cortez failed to argue the declarations against interest exception at the hearing for a new trial. If the alleged new evidence is true, Maresa could be charged with perjury. Cortez implies that Maresa was unavailable because she perjured herself when testifying at the trial. Although failure to raise an issue in the trial court ordinarily precludes review on

appeal, we will review the issue. See *State v. Ji*, 251 Kan. 3, 17, 832 P.2d 1176 (1992).

First, however, we must determine what rule applies to the introduction of evidence at the hearing on the motion for a new trial. We note that except to the extent to which they are relaxed by other procedural rules or statutes, applicable to the specific situation, the rules of evidence set forth in K.S.A. 60-401 *et. seq.*, are applied in every proceeding, both criminal and civil, conducted by or under the supervision of a court. K.S.A. 60-402. Whether hearsay evidence should be admitted at a post-trial hearing is within the discretion of the trial court. See *State v. Thomas*, 252 Kan. 564, 572, 847 P.2d 1219 (1993).

The State notes that this ruling was within the court's discretion and contends no abuse is shown. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

The court was correct in stating that if Maresa could be found, the evidence could be considered at that time. See *State v. Bradley*, 246 Kan. 316, 319, 787 P.2d 706 (1990). We agree that under the circumstances it was for the judge to determine if he should grant Cortez a new trial based on hearsay testimony that he might later exclude if a new trial was granted. The trial judge weighed the hearsay evidence and decided not to grant a new trial. Under these circumstances, it was not an abuse of discretion to preclude the testimony of the father as to the alleged hearsay statements of a witness who was unavailable.

## ADMISSION OF CORTEZ'S STATEMENT

Cortez next argues it was error to allow Maresa to testify as to his statement he and his brother killed an old man, because it was a confession. The State asserts Cortez's statement was not a confession but instead an admission against interest and admissible as an exception to the hearsay rule. See K.S.A. 1992 Supp. 60-460(j).

As authority for his claim that the statement the witness over-heard was a confession and inadmissible, Cortez cites *State v. Myers*, 229 Kan. 168, 625 P.2d 1111 (1981). Linda Axvig, the wife of Lorin Axvig, who was later charged as a coparticipant, gave a statement to the police that her husband told her that he had just killed someone and that Myers had asked him to commit the killing. The *Myers* court noted that the statements alleged to have been made by Lorin fell within two basic categories: (1) a statement which constituted a confession by Lorin of the commission of the homicide, K.S.A. 1992 Supp. 60-460(f), and (2) a statement which incriminated the defendant Myers in the homicide. This court treated Linda's statement to police officers as a confession by Lorin under 60-460(f), and held it was inadmissible against another coparticipant.

We disagree with the State that Cortez's statement was not a confession. A "confession," in a legal sense, is an acknowledgment of guilt made by a person after an offense has been committed and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred. *State v. Reinhart*, 26 Or. 466, 477-78, 38 Pac. 822 (1895). When a person only admits certain facts from which the jury may or may not infer guilt, there is no confession. *Covington v. The State of Georgia*, 79 Ga. 687, 690, 7 S.E. 153 (1887). A confession of guilt is an admission of the criminal act itself, not an admission of a fact or circumstance from which guilt may be inferred. *State v. Red*, 53 Iowa 69, 74, 4 N.W. 831 (1880); see *State v. Campbell*, 73 Kan. 688, 698, 85 Pac. 784 (1906).

K.S.A. 1992 Supp. 60-460(f) allows admission of a confession if

"the accused (1) when making the statement was conscious and capable of understanding what the accused said and did and (2) was not induced to make the statement (A) under compulsion or by infliction or threats of infliction of suffering upon the accused or another, or by prolonged interrogation under such circumstances as to render the statement involuntary or (B) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same."

The statement made by Cortez to his friend may be classified as a confession, but subsection (f) does not exclude the statement

because Cortez knew he was making the statement, he was not induced to make the statement, nor was he acting under compulsion or a threat. In addition, Cortez made the statement at a party in a manner that allowed others to hear his statement. Under the circumstances in which the statement was made, Cortez had no expectation that his statement was privileged.

Cortez claims admission of the statement was overwhelmingly prejudicial when weighed against its probative value and that it should have been excluded under K.S.A. 60-445. We disagree with his claim for several reasons. We first note that exclusion of evidence under K.S.A. 60-445 is not as broad as Cortez states. Under K.S.A. 60-445, the judge may in his or her discretion exclude evidence if the judge finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered. Under Cortez's reasoning, confessions would seldom be admitted into evidence. Secondly, Cortez was well aware his statement would be used against him and was not surprised by its admission into evidence. Application of the probative/prejudicial comparison under K.S.A. 60-445 is left to the discretion of the trial court. See *State v. Tran,* 252 Kan. 494, 504, 847 P.2d 680 (1993). No abuse of discretion in the admission of the statement is shown.

## PROSECUTORIAL MISCONDUCT

In his summation of his closing argument, the prosecutor stated:

"Ladies and gentlemen of the jury, you are here to decide this case to determine what the verdict is and the outcome of this case. The issue is the death of Daniel Evans and the involvement of that man in that death. *What you decide will be what our community stands for.*" (Emphasis added.)

Cortez objected to this comment as improper argument. The prosecutor argued it was a proper statement of the jury's "province." The court neither overruled or sustained the objection nor admonished the jury to disregard the remark but told the prosecutor to continue his argument to the jury. Cortez, on appeal, also complains of a remark by the prosecutor in his closing argument that the jury would decide what justice is. This statement was not objected to.

In *State v. Jordan*, 250 Kan. 180, 193, 825 P.2d 157 (1992), the prosecutor stated in closing, *inter alia*, " 'And if you want to live in a community where a person can kill another person . . . in the manner that this was conducted and excuse it because he has had a few drinks, that's up to you.' " This court, as well as the trial court which sustained the objection made, held that remark to be improper. We found the remark to be a violation of the Model Rules of Professional Conduct. However, we did not reverse Jordan's conviction because the trial court had sustained the objection and instructed the jury that statements of counsel were not evidence. In addition, defense counsel did not request either a mistrial or to have the jury admonished.

*State v. Majors*, 182 Kan. 644, 323 P.2d 917 (1958), involved repeated objectionable statements by the prosecutor even after the court had instructed the prosecutor to confine his comments to the evidence presented. Defense counsel moved for a mistrial, but that request was denied. The *Majors* court noted that the only conclusion that could be reached was that counsel for the State in his closing argument, over the objections of the defense and the admonitions of the trial court, had persistently tried to comment on matters outside of the record. The *Majors* court observed the comments were not withdrawn nor was the jury admonished to disregard them. Because the prosecutor's comments were so prejudicial, the defendant was granted a new trial.

The prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Improper remarks made by the prosecutor in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and to deny the defendant a fair trial. *State v. Hobbs*, 248 Kan. 342, Syl. ¶ 5, 807 P.2d 120 (1991). Here the court failed to directly rule on the objection, and, as the defense counsel did in Jordan, Cortez's counsel failed to move for a mistrial or to request that the court admonish the jury. The comment by the prosecutor should not have been made, and the court should have ruled on the objection.

However, after reviewing the record, we find, as we did in *Hobbs*, that the prosecutor's remarks were not reversible error.

## INSTRUCTING ON AIDING AND ABETTING

Cortez was charged with "unlawfully, feloniously, willfully and maliciously, but without deliberation or premeditation" killing Daniel Evans. Cortez notes that in the opening argument the prosecutor told the jury the State had to show Cortez intentionally killed Daniel Evans. When the trial judge was preparing instructions for the jury, the State requested an aiding and abetting instruction. Defense counsel objected because the State had not previously indicated to defendant that it was proceeding under an aiding and abetting theory. The court overruled the objection and gave the instruction.

Cortez claims it was unfair to give the instruction because the State, which had tried Earl earlier for the same crime, had knowledge it would request the aiding and abetting instruction before Cortez's trial began. Cortez argues that to allow the State to wait until the end of the trial to raise the aiding and abetting theory is fundamentally unfair. Cortez asserts this error was exacerbated by the judge's failure to compel Earl's testimony, which would have shown that he and Earl were not together during the entire evening. Cortez argues that if that testimony had been admitted, the jury could have rejected the aiding and abetting theory.

The State counters that the evidence presented supports the instruction. Both parties rely on *State v. Smolin*, 221 Kan. 149, 557 P.2d 1241 (1976), to support their argument. Smolin, although charged with aggravated battery, was tried as an aider and abettor. The *Smolin* court noted that, by statute and case law, this jurisdiction has long held that any person who counsels, aids, or abets in the commission of any offense may be charged, tried, and convicted in the same manner as if he or she was a principal. It rejected the defendant's arguments that it was unfair to give the aiding and abetting instruction. 221 Kan. at 152.

Cortez also cites a trio of federal court of appeals cases for the proposition that the conviction should be reversed because the giving of the instruction resulted in unfair surprise. See, *e.g., U.S. v. Sanchez*, 917 F.2d 607, 611 (1st Cir. 1990), *cert. denied* 499 U.S. 977 (1991). None of the cases define unfair surprise, although the underlying concern is whether the defendant had prior notice.

We note Cortez sought separate trials, alleging, *inter alia*, that the two defendants would have antagonistic defenses. In the prosecutor's opening statement at Cortez's trial, he informed the jury the evidence would show Cortez and his brother were at Evans' house within the time frame during which Evans died. The prosecutor also referred to evidence that was found in a room shared by the two brothers. The prosecutor closed by saying that after the jury heard all the evidence it would be able to conclude "Cortez Green was *involved* in the killing." (Emphasis added.)

A person is criminally responsible for a crime committed by others if that person intentionally aids and abets another in the commission of the crime. A person who aids and abets in the commission of the crime may be charged either as a principal or as an aider and abettor. *State v. Garcia*, 243 Kan. 662, Syl. ¶¶ 1, 2, 763 P.2d. 585 (1988). To give the instruction on aiding and abetting, there must be sufficient evidence to support the theory. The evidence supports giving the aiding and abetting instruction. Cortez's statement to the police places him at the scene, with his brother, on the evening of the homicide. Maresa's testimony was that she overheard Cortez admit he and Earl had killed someone. There was no unfair surprise involved. It was not error to give the aiding and abetting instruction.

## VII. DID THE TRIAL COURT ERR IN COMMENTING ON CORTEZ'S SILENCE AT SENTENCING, AND DID THE COURT FAIL TO COMPLY WITH K.S.A. 22-3422?

At sentencing, after Cortez declined the opportunity to make a statement to mitigate the punishment, the court stated:

"Well again, as stated in the last case, it appears from the evidence, this is a particularly vicious crime. Apparently two young men, I don't know whose participation amounted to what, stomped an old man to death, and who was also a family friend, and apparently over a bag of pork rind potato chips. And Mr. [Cortez] Green has not presented any evidence of mitigation, and we don't know his side of the story of what happened that night."

Cortez argues the sentencing judge's reference to his failure to tell his side of the story "is a clear violation of" his right to remain silent under the Fifth Amendment to the United States Constitution. The right to remain silent extends to the sentencing phase of criminal trials. *Estelle v. Smith*, 451 U.S. 454, 463, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981).

Before imposing sentence, the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally, and the defendant, if he or she wishes to, may make a statement on his or her own behalf and present any evidence in mitigation of punishment. K.S.A. 1992 Supp. 22-3424(4). The judge's comment did not violate Cortez's Fifth Amendment right to remain silent. As required by statute, the judge merely observed there was no mitigating evidence presented by defendant for the court to consider in assessing the punishment for the crime. This claim is totally without merit.

Cortez also contends the court failed to comply with the allocution requirement of K.S.A. 22-3422 that the court inform defendant of the verdict of the jury and ask whether defendant has any reason judgment should not be rendered. Cortez points out that the court never referred to the verdict in its comments when imposing sentencing on August 2, 1991. Cortez claims that the only remark addressed to him was when the judge asked if there was "anything you want to add personally."

Allocution is the formal inquiry by the court of the defendant to determine if the defendant has any legal cause to show why the judgment should not be pronounced against him. Black's Law Dictionary 76 (6th ed. 1990). When the defendant appears for judgment, he or she must be informed by the court of the verdict of the jury or the finding of the court and be asked whether he or she has any legal cause to show why judgment should not be rendered. If none is shown, the court shall pronounce judgment against the defendant. K.S.A. 22-3422.

Allocution is the appropriate time for motions for mistrial, new trial, arrest of judgment, or judgment of acquittal. The defendant is allowed adequate time for the filing and disposition of post-trial motions. K.S.A. 1992 Supp. 22-3424(3). Cortez filed his motion for new trial on July 11, 1991, alleging multiple trial errors. A hearing on Cortez's motion for new trial was held July 12, 1991. There is no transcript of the hearing on the motion for new trial in the record on appeal, but the journal entry on the motion for new trial states:

"Thereupon, the Court, after hearing the statements and arguments of counsel, and being otherwise well and fully advised in the premises, finds

that the Defendant's Motion for New Trial is denied and that the Court proceeds with allocution.

"Thereupon, the Court further finds that the Defendant, Cortez Green, was found 'guilty' by verdict of jury after jury trial on the 24th day of June, 1991 of the charge of Murder in the Second Degree, in violation of K.S.A. 21-3402, a Class B Felony.

"And the Court inquires of the Defendant if there is any reason why judgment of the Court should not be pronounced against him, and none appearing to the Court, the Court does find and adjudge the Defendant, Cortez Green, 'guilty' of the charge of Murder in the Second Degree, in violation of K.S.A. 21-3402, a Class B Felony."

Defendant had his allocution hearing July 11, 1991. Cortez was sentenced during a separate hearing on August 2, 1991. The judge was not required to again inquire if there was any legal reason why sentence should not be pronounced. Cortez's claim that the trial judge failed to comply with the allocution requirements of K.S.A. 22-3422 is without merit.

Affirmed.