IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,303

STATE OF KANSAS,
*Appellee*,

v.

JOHN R. CANTU,
*Appellant*.

SYLLABUS BY THE COURT

1.

The right to testify on one's own behalf at a criminal trial is a fundamental right grounded in multiple provisions of the United States Constitution.

2.

While a finding of forfeiture is the most overt way in which a defendant may be deprived of the right to testify, a court may also infringe on the right to testify by striking the defendant's testimony.

3.

Most constitutional errors can be reviewed for harmlessness. A constitutional error is harmless only if the party benefitting from the error establishes beyond a reasonable doubt the error will not or did not affect the trial's outcome in light of the entire record. Constitutional errors determined to be harmless do not require reversal.

4.

Structural errors are defects affecting the fundamental fairness of the trial's mechanism, preventing the trial court from serving its basic function of determining guilt

or innocence and depriving defendants of basic due process protections required in criminal proceedings. Structural errors are not amenable to a harmless error outcome-based analysis and thus require automatic reversal.

5.

The complete and wrongful denial of a defendant's constitutional right to testify by improperly removing a defendant from the stand and striking the defendant's entire testimony is structural error because it renders the criminal trial fundamentally unfair, regardless of whether the outcome of the trial would have been different had the defendant been permitted to testify and his or her testimony been left intact.

Review of the judgment of the Court of Appeals in 63 Kan. App. 2d 276, 528 P.3d 265 (2023). Appeal from Reno District Court; TRISH ROSE, judge. Oral argument held December 13, 2023. Opinion filed May 10, 2024. Judgment of the Court of Appeals affirming the district court on the issue subject to review is reversed. Judgment of the district court is reversed on the issue subject to review.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, argued the cause, and *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: This case requires us to decide whether the complete and improper denial of a criminal defendant's constitutional right to testify is structural error or can be analyzed for harmlessness. The Court of Appeals held this type of error can be analyzed using the harmless error standard and concluded it was harmless here. We disagree. Given the constitutional underpinnings of the right and the indeterminate or irrelevant effects of a total denial on the outcome of a criminal trial, we hold that the

complete and improper deprivation of the right to testify is structural error. Accordingly, we reverse John R. Cantu's convictions and remand for a new trial.

FACTS AND PROCEDURAL HISTORY

John R. Cantu was charged in Reno County District Court with two counts of felony stalking, two counts of violation of protection from stalking orders, criminal damage to property, criminal trespass, and felony criminal threat. *State v. Cantu*, 63 Kan. App. 2d 276, 276, 528 P.3d 265 (2023). He was tried before a jury, and he testified on his own behalf as the sole defense witness. On direct examination, Cantu denied all of the allegations against him and gave an uncorroborated alibi for his whereabouts on the night in question. The substance of Cantu's direct testimony and his demeanor on the stand appear to have been overall appropriate. He responded to all of his counsel's questions directly with one interruption and one irrelevant comment. There was no admonishment from the judge or objection from the State during his direct examination. Yet a very different situation unfolded on cross-examination.

The State's cross-examination of Cantu was cut short when the judge removed him from the stand on grounds that he was being uncooperative. Early in the State's questioning of Cantu, he interrupted the prosecutor by attempting to explain a previous answer, after which he ignored multiple admonishments from the judge to wait for a question. During a back-and-forth exchange with the judge, Cantu repeatedly asked if he was limited to answering only "yes" or "no," but the judge ignored his question. Instead, after several warnings, the judge removed Cantu from the stand and, at the prosecutor's request, struck his entire testimony from the record. The following transcript excerpt depicts the relevant exchange:

> "[STATE]:          You would agree that there was a protection from stalking that
>                    was filed against you, correct?

3

"[DEFENDANT]:     No.

"[STATE]:     You also agree?

"[DEFENDANT]:     For the record, for the record—

"COURT:     You need to wait for a question.

"[DEFENDANT]:     I didn't finish.

"COURT:     You need to wait for a question.

"[DEFENDANT]:     I didn't finish answering the first one.

"COURT:     I said it two times now. You need to wait for a question.

"[DEFENDANT]:     She asked if I agreed.

"COURT:     Sit back and wait for a question.

"[DEFENDANT]:     May I be allowed to explain? Do I have to say yes or no?

"[STATE]:     Mr. Cantu?

"COURT:     Mr. Cantu, if you don't cooperate I'm going to ask you to go back to the table.

"[DEFENDANT]:     May I ask a question?

"COURT:     You need to listen to the questions.

"[DEFENDANT]:     Am I supposed to respond yes or no?

"COURT:     Go sit at the table right now. Absolutely right now.

"[DEFENDANT]:     I don't understand. Can I object to this?

"COURT:     Sit at your table.

4

"[DEFENDANT]:          I mean, she asked me a question.

"COURT:               Officers, would you remove Mr. Cantu from the courtroom?

"[DEFENDANT]:          Is this going to be on the record? Dawn Hicks—my water. You—

"DEPUTY:              Grab your water.

"[COUNSEL]:           Is that sufficient, Your Honor?

"COURT:               If Mr. Cantu will remain compliant it is. Otherwise I will require his removal. He's indicating by his posture and returning to his seat that he will remain compliant. Do you have any other evidence."

The transcript record shows the judge warned Cantu four times to wait for or listen to the prosecutor's question before ordering him removed. The record also shows the judge repeatedly ignored Cantu's questions about how he was allowed to respond to the prosecutor's questions. Upon the prosecutor's motion and in front of the jury, the judge ordered Cantu's entire testimony stricken from the record, justifying this decision on grounds that "Mr. Cantu would not cooperate when I told him to only answer questions on cross-exam. I believe the State's request is valid. His testimony is stricken." The court made no further record of Cantu's conduct while he was on the stand, such as his body language, demeanor, or tone of voice.

Aside from granting the State's motion to strike Cantu's testimony in the presence of the jury, the judge did not specifically explain how the jury should treat Cantu's stricken testimony. But at the close of evidence and before jury deliberations, the court issued written instructions to the jury which explicitly advised: "In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, admissions or stipulations of the parties, and any admitted exhibits. You must disregard any testimony or exhibit which I did not admit into evidence."

5

The jury acquitted Cantu of criminal trespass but convicted him of two counts of felony stalking, two counts of violation of protection from stalking orders, criminal damage to property, and felony criminal threat. See *Cantu*, 63 Kan. App. 2d at 281. The district court imposed a controlling 24-month prison sentence and ordered restitution. Cantu appealed, arguing (1) there was insufficient evidence to support his convictions for stalking and violating the protection orders and (2) the district court's decision to strike his entire testimony from the record deprived him of his constitutional right to testify, which was structural error requiring automatic reversal. 63 Kan. App. 2d at 277. The Court of Appeals agreed with Cantu in part.

On the sufficiency claims, the panel reversed the two stalking convictions and the two convictions for violating a protection from stalking order, but affirmed the convictions for criminal damage to property and criminal threat. *Cantu*, 63 Kan. App. 2d at 293.

On the claimed violation of the right to testify, the panel concluded that the district court erred in ordering Cantu's testimony stricken from the record and that this error denied Cantu the constitutional right to testify. *Cantu*, 63 Kan. App. 2d at 289. But the panel held the error was not a structural one requiring automatic reversal. Instead, it found the error could be properly analyzed under the constitutional harmless-error standard. In conducting that analysis, the panel found Cantu's testimony amounted to a general denial of all charges, which was synonymous with his plea of not guilty. Next, the panel reasoned Cantu's counsel managed to relay his theory of the case during closing arguments. 63 Kan. App. 2d at 290-92. Finally, the panel noted the judge never specifically instructed the jury to disregard Cantu's testimony, and so the panel could not conclude that the jury did not consider the stricken testimony in arriving at its verdict. 63 Kan. App. 2d at 292. For these reasons, the panel was convinced beyond a reasonable doubt that the erroneous denial of Cantu's right to testify by improperly striking his

6

testimony did not affect the outcome of the trial and concluded the error was harmless. 63 Kan. App. 2d at 292-93.

Cantu petitioned for review, challenging the panel's holding that the complete and improper denial of the constitutional right to testify is not structural error but an error that can be analyzed for harmlessness. Alternatively, Cantu challenges the panel's conclusion that the court's error in denying his right to testify was harmless beyond a reasonable doubt.

The State did not file a cross-petition challenging any of the panel's rulings. Thus, the panel's conclusion that the district court erred in ordering Cantu's testimony stricken from the record and that this error denied Cantu the constitutional right to testify is an established point and not subject to review. See Supreme Court Rule 8.03(c)(3) (2023 Kan. S. Ct. R. at 57); *State v. Gonzalez*, 307 Kan. 575, 590, 412 P.3d 968 (2018) (when failing to file a cross-petition for review, Court of Appeals' holdings against respondent are settled). The only issue before us then is whether the district court's error in denying Cantu his constitutional right to testify is structural or can be properly analyzed for harmlessness.

ANALYSIS

Cantu claims the "complete and improper denial of the constitutional right to testify" is structural error. In support, he argues the right to testify is so integral to due process at trial that "[a] person who is wrongfully denied the right to testify in their own behalf can in no way be said to have had their 'day in court.'"

To resolve Cantu's claim, we first describe the fundamental and personal nature of the right to testify and then set forth the circumstances under which the right can be lost. Accepting as conclusive the panel's determination that the district court erroneously

7

denied Cantu's constitutional right to testify, we next consider whether the error can be reviewed for harmlessness. We ultimately conclude that the complete and improper denial of the constitutional right to testify is not amenable to harmless-error review and is therefore structural error.

1. *Right to testify*

The right to testify on one's own behalf at a criminal trial is a fundamental right grounded in multiple provisions of the United States Constitution. *Rock v. Arkansas*, 483 U.S. 44, 49-55, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *Ferguson v. Georgia*, 365 U.S. 570, 582, 81 S. Ct. 756, 5 L. Ed. 2d 783 (1961). In *Rock v. Arkansas*, the United States Supreme Court found this right is guaranteed by the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment, and necessarily implied by the Fifth Amendment privilege against self-incrimination. 483 U.S. at 51-53. These constitutional provisions apply to state proceedings through the Fourteenth Amendment. See *Washington v. Texas*, 388 U.S. 14, 17-19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (incorporating the Sixth Amendment Compulsory Process Clause); *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964) (incorporating the Fifth Amendment's protection against compelled self-incrimination).

At its most basic level, the right to testify allows a defendant to respond directly to the State's charges by "present[ing] his own version of events in his own words." *Rock*, 483 U.S. at 52. Thus, the Court has identified the right to testify as one in a bundle of minimum due process rights guaranteed by the Fourteenth Amendment that are essential to a fair trial. *Rock*, 483 U.S. at 51 (listing a criminal defendant's basic due process rights at trial as including, at a minimum, the right to confront witnesses, to offer testimony, and to be represented by counsel) (quoting *In re Oliver*, 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 682 [1948]).

The Court has also found the right to testify derives from the Sixth Amendment's Compulsory Process Clause, which grants a defendant the right to call favorable, material witnesses. *Rock*, 483 U.S. at 52 (noting "the most important witness for the defense in many criminal cases is the defendant himself"). In this way, the Court recognized the right to testify is part of the broader *personal* right to present a defense, designating it as even more fundamental than the right of self-representation. 483 U.S. at 52 (citing *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 [1975]).

Finally, the Court has interpreted the Fifth Amendment's privilege against self-incrimination as implying an affirmative right to testify. *Rock*, 483 U.S. at 52-53 ("'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so.'") (quoting *Harris v. New York*, 401 U.S. 222, 230, 91 S. Ct. 643, 28 L. Ed. 2d 1 [1971]).

Though fundamental, the right to testify is not absolute and "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*, 483 U.S. at 55 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 [1973]). For example, a defendant's right to testify is necessarily limited by procedural and evidentiary rules. It also comes with offsetting obligations to tell the truth and submit to cross-examination. See *Nix v. Whiteside*, 475 U.S. 157, 173, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986) (stating a defendant's right to testify does not include the right to commit perjury); *Brown v. United States*, 356 U.S. 148, 155, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958). Such rules facilitate the goals of "fairness and reliability in the ascertainment of guilt and innocence"—the central purpose of trial and ultimate duty of the trial court. *Chambers*, 410 U.S. at 302. Therefore, a defendant's right to testify should be understood as extending only to truthful, relevant testimony that is subject to proper cross-examination. Even so, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Rock*, 483 U.S. at 55-56. Thus, in limiting the right to testify, a court must evaluate whether the interests served

justify the limitation imposed. See *Rock*, 483 U.S. at 56 (referring to limitations on witness testimony imposed by state rules of evidence).

Having recognized the personal and fundamental nature of the right to testify and its contours, we next consider how the right can be lost.

2. *Circumstances under which right to testify can be waived or forfeited*

Under Kansas law, the right to testify is not self-executing—the defendant must invoke the right or else it is waived. *State v. McKinney*, 221 Kan. 691, 694, 561 P.2d 432 (1977) (citing federal cases). A defendant voluntarily waives the right by choosing not to testify. Some courts have also determined a defendant may forfeit the right to testify by serious misconduct during trial, just as the United States Supreme Court has held of the right to be present at trial in *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).

In *Allen*, the Court held that a defendant lost his constitutional right to be present at trial by engaging in conduct that is "so disorderly, disruptive, and disrespectful of the court that [the] trial cannot be carried on with [the defendant] in the courtroom." 397 U.S. at 343. The defendant's conduct in *Allen* consisted of several irrelevant tangents and abusive, threatening outbursts that together displayed a defiant unwillingness to comply with normal order and decorum. At one point, the defendant threatened the judge would be made a "corpse" and promised to obstruct the proceedings: "'There's not going to be no proceeding. I'm going to start talking and I'm going to keep on talking all through the trial.'" 397 U.S. at 340-41.

Although cautioning that courts must indulge every reasonable presumption against the loss of constitutional rights, the Court made clear that "flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be

10

tolerated." *Allen*, 397 U.S. at 343. The Court explained that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." 397 U.S. at 343. Acknowledging the need to weigh the competing interests of the constitutional right to be present at trial on the one hand and the orderly progress and effective administration of justice on the other, the Court held under the facts presented that the trial court's decision to remove Allen from the courtroom was constitutionally permissible:

> "[W]e explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." 397 U.S. at 343.

Some courts have extended the holding in *Allen* to conclude that, along with the right to be present at trial, the right to testify can also be waived or forfeited by the defendant's disorderly, disruptive, or disrespectful conduct. *United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir. 1989) (stating right to testify may be waived by "'contumacious conduct'"); *United States v. Ives*, 504 F.2d 935, 941 (9th Cir. 1974) ("[J]ust as the right of presence in the courtroom can be waived by the defendant's contumacious conduct, the privilege to testify can also be waived by the defendant's conduct."), *vacated on other grounds by* 421 U.S. 944, 95 S. Ct. 1671, 44 L. Ed. 2d 97 (1975), *opinion reinstated in relevant part by* 547 F.2d 1100 (9th Cir. 1976); *State v. Anthony*, 361 Wis. 2d 116, 144-56, 860 N.W.2d 10 (2015) (affirming denial of the right to testify when defendant's proffered testimony was irrelevant and defendant's conduct was stubborn and defiant to the point of threatening the fairness and reliability of the trial process); *Douglas v. State*, 214 P.3d 312, 322, 328 (Alaska 2009) (applying the *Allen* standard to find a defendant forfeited the right to testify by often interrupting the

11

proceedings with irrelevant arguments and repeatedly insulting the prosecutor, attorneys, and judge). In so holding, all of these courts brought forth *Allen*'s precautionary language requiring that the trial judge first specifically warn the defendant of the impending loss of the right.

While a finding of forfeiture is the most overt way in which a defendant may be deprived of the right to testify, a court may also infringe on the right to testify by striking the defendant's testimony. Striking the testimony of any witness is a drastic remedy not to be lightly invoked. *United States v. McKneely*, 69 F.3d 1067, 1076 (10th Cir. 1995). But when the witness is the defendant, courts must proceed with extra caution when deciding whether to strike testimony due to the constitutional right at stake. See *Allen*, 397 U.S. at 342-43 (reiterating a trial court's responsibility to "indulge every reasonable presumption against the loss of constitutional rights"). This obligation is not lessened when the defendant's behavior causes frustration. See *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir. 1988) ("A contentious defendant has no fewer rights than a sympathetic one."). Yet striking any witness' testimony is an appropriate remedy when the witness frustrates the fact-finding process, such as by testifying to irrelevant matters or refusing to answer the cross-examiner's questions. See, e.g., *United States v. Evans*, 908 F.3d 346, 355 (8th Cir. 2018); *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988).

We accept as conclusive the panel's determination that the district court erroneously denied Cantu's constitutional right to testify by striking his direct testimony. See Supreme Court Rule 8.03(c)(3) (2023 Kan. S. Ct. R. at 57); *State v. Corey*, 304 Kan. 721, 741-42, 374 P.3d 654 (2016) (Supreme Court did not question panel's determination about defendant's absence during a critical stage of trial, noting State did not cross-petition for review on that question). Thus, we turn now to whether the district court's error is structural or can be analyzed for harmlessness.

12

3. *Error analysis*

The question of what type of error analysis applies to a constitutional failure in a criminal trial is a question of law over which this court has unlimited review. *State v. Johnson*, 310 Kan. 909, 913, 453 P.3d 281 (2019).

Most errors that occur during a criminal trial, even those affecting a defendant's constitutional rights, can be reviewed to determine whether they are harmless. *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013). A constitutional error is harmless only if the party benefitting from the error establishes beyond a reasonable doubt the error will not or did not affect the trial's outcome in light of the entire record. 296 Kan. at 1110. Constitutional errors determined to be harmless do not require reversal. *State v. Ward*, 292 Kan. 541, 556, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967] [stating a federal constitutional error is harmless only when there is no reasonable possibility the error contributed to the conviction]).

But the United States Supreme Court has recognized a limited category of errors which violate constitutional rights "so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman*, 386 U.S. at 23-24, n.8 (citing *Payne v. State of Arkansas*, 356 U.S. 560, 78 S. Ct. 844, 2 L. Ed. 2d 975 [1958] [coerced confession]; *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [1963] [total deprivation of counsel]; *Tumey v. State of Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 [1927] [having an impartial judge]). See also *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (denial of right to counsel of choice); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (defective reasonable-doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (racial discrimination in selection of grand jury); *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (denial of

13

self-representation at trial). Errors of this kind are considered "structural" and require a new trial regardless of whether prejudice has been shown because they constitute a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Structural errors prevent the trial court from serving its basic function of determining guilt or innocence and deprive defendants of the basic protections of a criminal trial. *Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 [1986]). In short, errors of this kind compromise the fundamental fairness expected in a criminal trial. See *McCoy v. Louisiana*, 584 U.S. 414, 427, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018).

In addition to impairing the framework of the trial itself, the consequences of structural errors are generally difficult to assess and therefore unamenable to the "outcome-based" analysis of harmless-error review. When the prejudicial effects of a constitutional violation are unquantifiable and indeterminate, any assessment of the effect on the outcome of trial becomes a purely speculative endeavor. See *Gonzalez-Lopez*, 548 U.S. at 149, n.4 (denial of right to counsel of choice considered structural error based on the "difficulty of assessing the effect of the error"); *Vasquez*, 474 U.S. at 263 ("[W]hen a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained"); *Waller,* 467 U.S. at 49, n.9 (violation of the public-trial guarantee is not subject to harmlessness review because "the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance"). When the effects of a constitutional error cannot be adequately measured for harmlessness, automatic reversal is necessary.

As well as the difficulty in assessing structural error, the United States Supreme Court has also relied on the irrelevance of a harmlessness analysis when the constitutional right violated protects an interest other than an erroneous conviction.

14

*Gonzalez-Lopez*, 548 U.S. at 149, n.4. An example is the right to self-representation which, when exercised, "usually increases the likelihood of a trial outcome unfavorable to the defendant." *McKaskle*, 465 U.S. at 177, n.8. The right to self-representation "is based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 582 U.S. 286, 295, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017) (citing *Faretta*, 422 U.S. at 834). "Because harm is irrelevant to the basis underlying the right, the Court has deemed a violation of that right structural error." *Weaver*, 582 U.S. at 295 (citing *Gonzalez-Lopez*, 548 U.S. at 149, n.4).

Like the United States Supreme Court, this court has found structural errors in a limited class of cases. See, e.g., *State v. Bunyard*, 307 Kan. 463, 471, 410 P.3d 902 (2018) (right to self-representation) ("'Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis.'"); *Miller v. State*, 298 Kan. 921, 935, 318 P.3d 155 (2014) (right to a reasonable doubt instruction) ("A jury instruction that a jury is reasonably likely to have applied in a way that could produce a guilty verdict despite reasonable doubt is per se prejudicial."); *State v. Cox*, 297 Kan. 648, 656, 304 P.3d 327 (2013) (right to a public trial) ("The district judge's wholesale closure of the courtroom during the presentation of [sensitive] evidence, in the absence of the State or the judge expressing any 'overriding interest' combined with the lack of meaningful consideration of alternatives, violated [defendant's] . . . right to a public trial."); *State v. Calderon*, 270 Kan. 241, 253-54, 13 P.3d 871 (2000) (right to be present at trial) (structural error when district court denied a non-English speaking defendant a "meaningful presence" at a critical stage of trial—an error that implicates the basic consideration of fairness—by failing to provide an interpreter during closing arguments, thus the error's effect on the outcome of trial is irrelevant); see also *State v. Harris*, 311 Kan. 371, 377, 461 P.3d 48 (2020) (right to a jury trial) (automatic reversible error when

15

district court failed to properly apprise defendant of his right to a jury trial and obtain a sufficient waiver of the right).

This court's general approach for determining structural error has been based on the rationale that the error at issue compromised the fundamental fairness of the trial mechanism, both from the perspective of the court's function and the defendant's right to due process. See generally *Johnson*, 310 Kan. at 913-14 (explaining structural errors "prevent the trial court from serving its basic function of determining guilt or innocence and deprive defendants the 'basic protections' of a criminal trial"). In appropriate cases, we have also considered whether the error's effect on the trial's outcome is difficult to measure or simply irrelevant. See, e.g., *Bunyard*, 307 Kan. at 471 (explaining that denial of the right to self-representation is not amenable to harmless error analysis because exercise of the right usually *increases* the likelihood of an unfavorable trial outcome for defendant); *Calderon*, 270 Kan. at 253 (noting a defendant's presence in the courtroom "can have a powerful influence on the outcome of the trial" because a "defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact"). Thus, our bases for identifying structural errors aligns with the United States Supreme Court's historical precedent. See generally *McCoy*, 584 U.S. at 427 (summing up the different rationales the Court has used to classify structural errors).

Additionally, the extent of the particular deprivation can be a factor in our finding of structural error. Wrongful, wholesale deprivations of fundamental constitutional rights are more likely to be structural. In such cases, the circumstances in which the deprivation took place matter greatly. Compare *Calderon*, 270 Kan. at 253-54 (denial of right to be present at trial during closing arguments by failure to provide necessary interpreter is structural error), with *State v. Mann*, 274 Kan. 670, 683, 56 P.3d 212 (2002) (denial of right to be present at trial during ex parte communications between judge and jurors subject to harmless-error review).

16

Finally, because a constitutional right may be properly denied, in full or in part, only when a legitimate, overriding interest is present, we look carefully at whether the district court properly weighed both the interest and the right at stake and deprived the right only to the extent necessary to protect that interest. See, e.g., *Cox*, 297 Kan. at 656-57 (holding the district judge's "wholesale closure" of the courtroom during the presentation of material evidence without expressing any "overriding interest" or meaningfully considering alternatives was structural error).

Thus, depending on the nature of the right at stake, both the extent of the deprivation and the circumstances of its deprivation can be highly relevant factors to the type of error analysis that applies. We now consider these factors in the context of the record before us.

We need not repeat the back-and-forth discussion that took place between the judge and Cantu during his cross-examination. We have already noted Cantu interrupted the prosecutor, attempted to give more than a yes or no answer to a previous question, and did not abide by the judge's repeated instructions to do just that. We also observed the judge did not respond to Cantu's repeated and simple question about how he could answer but instead removed him from the stand. Having done so, the judge was then faced with the State's immediate motion to strike Cantu's testimony on grounds that the State was denied the right to cross-examine him.

Had the judge only removed Cantu from the stand without striking his direct testimony, his right to testify would have been partially denied by foreclosure of further testimony on cross-examination and redirect. But the judge then struck Cantu's testimony up to that point. The effect of the court's order was to remove Cantu's entire testimony from the jury's consideration as if he had never testified. This action runs counter to the court's fact-finding function by depriving the jury of the opportunity to weigh this

17

evidence and consider Cantu's credibility against the State's evidence and witnesses. The combination of removing Cantu from the stand and then striking his entire testimony constituted a complete denial of his right to testify. And based on the panel's finding that the court abused its discretion in doing so, this wholesale denial was wrongful.

Given the importance of the right at stake and the extent of the deprivation here, the district court's denial of Cantu's right to testify constitutes a defect affecting the entire trial framework and is therefore structural error. Cantu had no chance to be heard, to personally defend against the charges, or to call the most important material witness— himself. As a result, the jury could not consider his body language, expressions, tone of voice, and, of course, the substance of his testimony. Assessing the effect of an error of this magnitude on the outcome of trial would be improper speculation. And ultimately, an analysis of whether the outcome of the trial would have been different if Cantu had been allowed to testify is irrelevant because he is prejudiced by this lack of essential due process which rendered his criminal trial fundamentally unfair.

This is not to say that the denial of a defendant's right to testify will always be structural error and can never be analyzed for harmlessness. The extent and circumstances of the deprivation drive the reversibility framework. There may be instances where the deprivation is so slight, error is amenable to harmless error analysis. But where the impairment is closer to absolute, it "'implicates the basic consideration of fairness'" expected in a criminal trial. *State v. McDaniel*, 306 Kan. 595, 604, 395 P.3d 429 (2017) (quoting *Calderon*, 270 Kan. at 253). As an example, we look to *State v. Carr*, 300 Kan. 1, 209-11, 331 P.3d 544 (2014), *rev'd and remanded on other grounds* 577 U.S. 108, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016), where this court held the violation of a defendant's right to present a defense by erroneous evidentiary rulings, even when implicating the right to testify, is subject to harmless-error review.

Carr sought to introduce testimony that an unknown, uncharged third person committed the crimes with his codefendant instead of him. The State argued this evidence should be excluded as improper third-party evidence and could not be admitted under a hearsay exception. The trial court agreed with the State and found Carr's proffered testimony inadmissible. In the wake of the judge's rulings and after consulting with his counsel, Carr chose not to testify at trial.

On direct appeal, Carr argued the district court misapplied the applicable rules of evidence and consequently prevented him from testifying to "anything useful" in his defense. 300 Kan. at 210. He urged this court to treat the district court's erroneous evidentiary rulings as structural errors. This court agreed with Carr that the district court abused its discretion in excluding the proffered evidence, thereby violating his right to present a complete defense. 300 Kan. at 210. The court also entertained Carr's argument that these rulings infringed on his right to testify. 300 Kan. at 210-11. But guided by the United States Supreme Court's decision in *Crane v. Kentucky*, 476 U.S. 683, 691, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986), on denial of the right to present a defense and persuasive authority on denial of the right to testify, the court applied the constitutional harmlessness standard to evaluate the effect of these errors. See *Carr*, 300 Kan. at 211 (noting the majority rule "appears" to be the harmless-error standard for a wrongful denial of the right to testify) (citing *Palmer v. Hendricks*, 592 F.3d 386 [3d Cir. 2010]; *Ortega v. O'Leary*, 843 F.2d 258 [7th Cir. 1988]; *Wright v. Estelle*, 572 F.2d 1071 [5th Cir. 1978]; *Quarels v. Com.*, 142 S.W.3d 73 [Ky. 2004]). Given the strength of the State's overwhelming evidence supporting Carr's guilt, this court ultimately found the district court's wrongful violation of Carr's rights to present a defense and to testify was harmless. 300 Kan. at 212.

We find *Carr* distinguishable from the present case because both the extent and circumstances of the deprivation there were materially different. While *Carr* did not explicitly address the extent and circumstances of the deprivation, it is implicit in its

holding. First, the extent of the deprivation in *Carr* was materially different from Cantu's. The alleged deprivation in *Carr* arose from an evidentiary ruling. And evidentiary rulings can generally be analyzed under the constitutional harmlessness standard. While such a violation may amount to a partial infringement on a defendant's right to testify, these errors can usually be analyzed in the context of other evidence. See, e.g., *Crane*, 476 U.S. at 691 (holding the erroneous exclusion of defendant's testimony about the circumstances in which his confession was obtained could be analyzed for harmless error); *State v. Green*, 254 Kan. 669, 680-81, 867 P.2d 366 (1994) (holding the erroneous exclusion of admissible hearsay evidence by failure to compel a witness to testify could be analyzed for harmless error). Importantly, a deprivation of this kind is less likely to impair the overall integrity of the trial. As to the circumstances surrounding the deprivation, Carr personally chose not to testify, though he appears to have done so based on the district court's evidentiary rulings. See *Carr*, 300 Kan. at 210. As such, he voluntarily waived his right to testify as a strategic decision for his defense. That circumstance is markedly different from the situation here in which the district court judge unilaterally and completely removed Cantu's personal right to testify.

We therefore do not read *Carr* to prescribe—without exception—application of the constitutional harmless error test to evaluate whether any improper infringement of a defendant's right to present a defense or to testify requires reversal. To do so would require us to apply the constitutional harmless error test to a scenario in which the court completely and improperly prohibits defendant's counsel from presenting a defense and submits the matter to the jury for decision when the State rests based on a congested docket. Or to apply the constitutional harmlessness test to the situation here, in which the court completely and improperly prohibits the defendant from testifying at his own trial. In these cases, it is inappropriate to assess the effect such an error had on the outcome of the trial because the error impairs the integrity of the trial, no matter the outcome.

20

The district court's error in striking all of Cantu's testimony resulted in an absolute and unqualified deprivation of his right to testify. He was completely stripped of an opportunity to be heard in his own voice or to personally defend against the State's charges. This defect in the framework of Cantu's trial infected the entire judicial process by rendering his trial fundamentally unfair, regardless of whether the error affected the outcome of the trial. Thus, the complete and improper denial of Cantu's constitutional right to testify is structural error requiring reversal of his convictions and a new trial.

Our decision today should not be viewed as hindering a district court's discretion to preserve dignity, order, and decorum within the courtroom or its fact-finding mission. In appropriate circumstances, a district court can and should prevent a defendant from testifying or strike a defendant's testimony as an ultimate sanction. Rather, we echo and underscore the United States Supreme Court's guidance in *Allen* that courts are to "indulge every reasonable presumption against the loss of [a defendant's] constitutional rights." 397 U.S. at 342-43. Therefore, courts should proceed with appropriate caution and heightened sensitivity when considering restrictions on a defendant's right to testify, particularly when the restriction results in a complete and unqualified denial of the right as occurred here.

Judgment of the Court of Appeals affirming the district court on the issue subject to review is reversed. Judgment of the district court is reversed on the issue subject to review.

BILES, J., concurring in the result.

21