NOT DESIGNATED FOR PUBLICATION

No. 127,596

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
DARRIS COLTON THOMAS JR.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Submitted without oral argument.
Opinion filed February 13, 2026. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Dwight R. Carswell*, deputy solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., COBLE and SEAN M.A. HATFIELD, District Judge, assigned.

PER CURIAM: Darris Colton Thomas Jr. is a convicted sex offender, and the State petitioned to have him civilly committed as a sexually violent predator. After two court-appointed attorneys, Thomas thought it wise to proceed self-represented. Prior to the civil jury trial, the district court denied Thomas' request for continuance. Thomas responded that he would not appear for trial. Time and again, the court advised him of the dangers of his choices but those admonitions, while heard, went unheeded. Predictably, without his presence and without counsel, a jury found him to be a sexually violent predator and Thomas was civilly committed.

Thomas now appeals the failure to appoint standby counsel and proceeding to trial without his presence as violations of due process and what Thomas argues was an inadequate waiver of counsel. After a lengthy due process review, we find Thomas had no right to standby counsel. That was a matter resting within the sound discretion of the

1

district court. Neither did he have a statutory right to be present at his civil commitment trial. Further, the record shows the district court thoroughly advised Thomas of the challenges of self-representation, Thomas had a broad understanding of the case, and he made a knowing and voluntary decision to proceed self-represented. So, we find no errors and affirm.

FACTS

Darris Colton Thomas Jr. was convicted of indecent solicitation of a child. Several months later the State filed a petition seeking to civilly commit Thomas as a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA). The district court first appointed an attorney to represent Thomas, but she later moved to withdraw after Thomas filed a complaint against her. A second attorney was then appointed.

Thomas, however, elected to proceed self-represented and the district court held a hearing to determine Thomas' competency to do so. After finding Thomas competent to represent himself, the district court allowed his second appointed attorney to withdraw from the case. Further considering the matter several months later, the district court asked Thomas to sign a written waiver of his right to counsel. Again, the district court reminded Thomas that he had a right to an attorney and could have one appointed if he could not afford one, that he would be held to the same standards as an attorney, and that any issues he raised about this afterwards would be waived. While the district court encouraged him to have counsel, he was told that it was his decision. Subsequently, Thomas affirmed that he planned to proceed self-represented and firmly told the court he was waiving his right to counsel. Thomas also informed the district court that he understood that he could change his mind any time and have counsel appointed. He signed the waiver acknowledging the same.

2

At a pretrial conference, the district court confirmed once again that Thomas wanted to proceed self-represented. The court explained that Thomas would not be given assistance, that he would be held to the same standards as a regular attorney, that any issues he did not raise would be lost, that the rules of law are highly technical, and that the court could still appoint him counsel. Thomas acknowledged that he understood and still wanted to represent himself.

Later, Thomas filed a motion seeking a continuance of the jury trial. Thomas said that while he was ready for trial, he needed more time to file various complaints. Thomas was clear and told the court, "I'm ready for the case but I need time to file my complaints, and that's why I need the continuance." Finding Thomas was ready for trial, the continuance was denied. Dissatisfied, Thomas stated that he may not show up for the trial. The district court reminded Thomas of the following:

> "Mr. Thomas, from the Court's perspective you have a right to appear and be present. The Court recognizes that and encourages that that you should appear on Monday.
> "If you voluntarily absent yourself, the Court would view that as a waiver of your right to appear and for your right to participate, which means you would be giving up the right to question jurors during voir dire, exercise peremptory challenges, to participate in choosing the jury.
> "You'd be giving up or waiving your right to make an opening statement or reserve that until time after the State presents their evidence. You'd be giving up the right to challenge the State's evidence, cross-examine their witnesses, present evidence in your own favor.
> "You'd be giving up the right to testify in your own defense, to make a closing argument, participate in the jury instruction conference, and any other incident related to the trial. Do you understand that?"

Thomas responded that he thought his case was lost and so it did not matter whether he showed up or not. The district court followed up by asking him if he

3

understood that he would be giving up the rights that it had just described. Thomas understood. Still, the district court set another hearing the following day to give Thomas time to think over his decision.

The following morning, Thomas reasserted that he was not going to appear at trial. Diligent and persistent, the district court took great lengths to ensure Thomas understood the trial would continue with or without him. The court emphasized:

"THE COURT: Well, Mr. Thomas, you understand that if you refuse to appear you will not be present when the Court calls the case for the docket and the introduction of the parties to the jury? Do you understand that?

"THE RESPONDENT: Yeah, I'm fine with that.

"THE COURT: And you understand as well that you'll be absent for voir dire, or the questioning of the jury, and the selection of the jury through peremptory strikes and challenges for cause, you'd be absent for that? Do you understand that?

"THE RESPONDENT: I'm fine with all of that.

"THE COURT: And do you understand that you'd be absent and not present for the State's case in chief, through direct examination of witnesses and presentation of their evidence, as well as your case in chief? And you would not be present for direct examination of witnesses or calling any witnesses or presenting any evidence? Do you understand that?

"THE RESPONDENT: Yes, sir.

"THE COURT: And do you understand that there would be no one here to offer any evidence to the jury and the Court will not do that in your absence? As I told you previously, this Court won't assist in representation, nor would the State, that is your responsibility as a self-represented litigant? Do you understand that?

"THE RESPONDENT: Yes, sir.

"THE COURT: And do you understand that you would not be present for closing argument if you voluntarily absent yourself for trial next week? Do you understand that?

"THE RESPONDENT: Yes, sir.

"THE COURT: In addition, you'd be absent for jury deliberation, for the right to be present to address any questions that may be submitted to the Court by the jury, you'd be absent for the conclusion of jury deliberations, including the right to be present if the jury reaches a verdict, and you'd be absent from the right to poll the jury pursuant to statute. Do you understand that?

"THE RESPONDENT: Yes, sir.

"THE COURT: You would also be absent [from] the process that takes place before the jury is instructed, where the parties participate in a jury instruction conference, including participating in drafting the jury instructions. Do you understand that?

"THE RESPONDENT: Yes, sir.

"THE COURT: And you understand that this Court has and will continue to strongly encourage you to be present for trial. Do you understand that?

"THE RESPONDENT: Yes, sir."

The district court then inquired about Thomas "rest[ing] [his] case":

"THE COURT: And you understand, you keep saying you've rested your case, you understand that there have been no offered exhibits to the jury because there has been no jury, one has not been impaneled, and no evidence has been offered? Do you understand that?

"THE RESPONDENT: Yes, sir.

"THE COURT: And that means that if you do not appear next week for trial there will not be anyone here to offer evidence [on] your behalf? Do you understand that?

"THE RESPONDENT: Yes, sir.

"THE COURT: And there would be no one here to object to evidence or testimony offered by the State? Do you understand that?

"THE RESPONDENT: Yes, sir."

Again Thomas verified that the reason for his continuance request was for the purpose of filing complaints.

On the morning of trial, the district court directed a Saline County Sheriff's deputy to inquire. Thomas told the deputy that he did not wish to attend the trial both before the start as well as periodically throughout the day when the deputy followed up about the court's continuing query regarding his presence. Thomas even refused to appear after being subpoenaed by the State to compel his presence. At trial, which Thomas repeatedly chose not to attend, the jury found that Thomas was a sexually violent predator. Thomas was then committed to the custody of the Secretary of the Department for Aging and Disability Services for care and treatment.

Thomas filed a timely notice of appeal.

ANALYSIS

*Due process considerations*

Thomas argues procedural due process violations from structural errors flowing from the district court's acceptance of what Thomas argues was an inadequate waiver of his right to counsel and the district court's decision to proceed with jury trial without Thomas' presence and without counsel—which Thomas waived.

Appellate courts review the claim of a party's constitutional rights being violated as a question of law subject to unlimited review. *In re Care & Treatment of Sykes*, 303 Kan. 820, 823, 367 P.3d 1244 (2016). When evaluating a due process claim, appellate courts first determine if a fundamental liberty or property interest is implicated. If one of those is present, then the court determines the nature and extent of the process due. *State v. N.R.*, 314 Kan. 98, 113, 495 P.3d 16 (2021).

The appointment of standby counsel rests in the sound discretion of the district court. *State v. Breitenbach*, 313 Kan. 73, 94, 483 P.3d 448 (2021). "'A district court

6

abuses its discretion when (1) no reasonable person would have taken the view adopted by the district court; (2) the judicial action is based on an error of law; or (3) the judicial action is based on an error of fact.'" *State v. Kemmerly*, 319 Kan. 91, 99, 552 P.3d 1244 (2024) (quoting *State v. Hillard*, 313 Kan. 830, 838, 491 P.3d 1233 [2021]). The burden of establishing the abuse of discretion rests with the party alleging error. 319 Kan. at 99.

To civilly commit someone under the KSVPA, K.S.A. 59-29a01 et seq., the State first petitions the court to determine whether there is probable cause to believe that the person meets the statutory definition of a sexually violent predator. K.S.A. 59-29a04(a). The district court then makes an initial probable-cause determination; if the court determines that there is probable cause, it orders the person be taken to county jail until the court can hold a hearing. K.S.A. 59-29a05(a). At that hearing, the person may contest the court's initial determination. K.S.A. 59-29a05(b), (c). If the court again finds that probable cause exists to believe the person is a sexually violent predator, it orders a mental health examination at a secure facility. K.S.A. 59-29a05(d), (e). The State then tries the case. At that trial, the trier of fact must determine whether the person is a sexually violent predator beyond a reasonable doubt. K.S.A. 59-29a06; K.S.A. 59-29a07. See *In re Care & Treatment of Easterberg*, 309 Kan. 490, 498-99, 437 P.3d 964 (2019).

To commit a person under the KSVPA, the State has the burden to prove beyond a reasonable doubt that the person (1) has been convicted of or charged with a sexually violent offense, (2) suffers from a mental abnormality or personality disorder, (3) is likely to engage in repeat acts of sexual violence because of that abnormality or disorder, and (4) has serious difficulty controlling the dangerous behavior. K.S.A. 59-29a02(a); K.S.A. 59-29a07(a); *In re Care & Treatment of Quillen*, 312 Kan. 841, 851, 481 P.3d 791 (2021).

Although KSVPA actions are civil proceedings, the statutory scheme possesses many criminal characteristics. See *In re Care & Treatment of Foster*, 280 Kan. 845, 853,

127 P.3d 277 (2006). Additionally, "[i]n [KSVPA] proceedings under this section, [a] person shall be entitled to the assistance of counsel." K.S.A. 59-29a06(b). And if the person is indigent, "the [district] court shall appoint counsel to assist such person." K.S.A. 59-29a06(b).

*The fundamental liberty interest at stake*

Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re Care & Treatment of Ellison*, 305 Kan. 519, 526, 385 P.3d 15 (2016) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 [1976]). The United States Supreme Court has highlighted that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). And the Kansas Supreme Court has similarly held this to be true as well. *In re Sykes*, 303 Kan. at 824. But a person's due process rights are not violated if the substantive KSVPA findings support commitment. *In re Ellison*, 305 Kan. at 527.

Here, a jury found that Thomas was a sexually violent predator. Thomas was then civilly committed to the Secretary of the Department for Aging and Disability Services' custody for care and treatment. Thomas' liberty interest has been adequately implicated. See *Addington*, 441 U.S. at 425; *In re Sykes*, 303 Kan. at 824.

*Due process owed Thomas*

Kansas appellate courts apply a three-factor test to determine the nature and extent of the process due. *In re Ellison*, 305 Kan. at 530-31. These factors include:

8

"'(1) the individual interest at stake;

"'(2) The risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and

"'(3) The State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail.' [Citation omitted.]" *In re J.L.*, 57 Kan. App. 2d 60, 65, 449 P.3d 762 (2019).

### *The individual interest at stake*

Civil commitment "is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Addington*, 441 U.S. at 427. "'[T]he Due Process Clause requires the State in a civil-commitment proceeding to demonstrate by clear and convincing evidence that the individual is mentally ill and dangerous.'" *In re Care & Treatment of Snyder*, 308 Kan. 626, 635, 422 P.3d 85 (2018) (quoting *Jones v. United States*, 463 U.S. 354, 362, 103 S. Ct. 3043, 77 L. Ed. 2d 694 [1983]). The KSVPA exceeds the normal civil standard in demanding that the State proves the individual is a sexually violent predator beyond a reasonable doubt. See K.S.A. 59-29a07(a); *In re Ellison*, 305 Kan. at 527.

Thomas was civilly committed after being found beyond a reasonable doubt to be a sexually violent predator. Because Thomas was civilly committed, this factor weighs in favor of Thomas. See *Addington*, 441 U.S. at 427; *In re Snyder*, 308 Kan. 626; *In re Ellison*, 305 Kan. at 527.

### *The risk of erroneous deprivation*

Again, standby counsel for self-represented litigants rests in the sound discretion of the district court. *Breitenbach*, 313 Kan. at 94. That discretion is so broad that a district court judge "may appoint [said] standby counsel over the pro se defendant's objection." 313 Kan. at 94 (citing *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S. Ct. 2525, 45 L.

9

Ed. 2d 562 [1975]). But a person's due process rights are not violated if there are adequate substantive findings which support the individual's commitment. *In re Ellison*, 305 Kan. at 527.

Thomas relies on our Supreme Court's decision in *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 287 P.3d 855 (2012), to point out that the district court did not "appreciate that a similar extent and nature of process was due to Thomas." However, as Thomas concedes, *In re Ontiberos* dealt with whether the assistance of counsel applied to KSVPA proceedings. See 295 Kan. at 27-28. Here, Thomas' situation centers on his waiver of the statutory right of assistance of counsel in his civil commitment proceeding. See *In re Ontiberos*, 295 Kan. at 27-28. Yet Thomas rejected the assistance of counsel on multiple occasions. This diminishes Thomas' argument comparing the situation in *In re Ontiberos* to his own. See 295 Kan. at 27-28.

The Kansas Supreme Court has also dealt with a similar circumstance where the appellant suggests that standby counsel was a necessary tool to prevent a due process violation. See *Kemmerly*, 319 Kan. at 101. Still, Thomas fails to show or to even argue that the district court abused its discretion based on an error of fact or law, or that no reasonable person would have made the same choice. See 319 Kan. at 101.

Thomas also argues that holding a trial without his presence was improper. But Thomas fails to provide any authority requiring a defendant to be present for a civil commitment trial in Kansas. While a criminal defendant has a right "to be present at every critical stage of the proceedings," Kansas law also does not require Thomas or any other individual to be present at the KSVPA civil commitment hearing. See K.S.A. 59-29a05(g)(1)-(2); *State v. McDaniel*, 306 Kan. 595, 600, 395 P.3d 429 (2017). And there was certainly no lack of effort by the district court to encourage his presence. Even the State attempted to subpoena Thomas to appear at trial. Still, he chose not to attend.

This factor weighs in favor of the State since the facts of this case show that the district court's decision to hold the proceedings in absentia as well as the choice to not appoint standby counsel created no erroneous risk of deprivation. See K.S.A. 59-29a05(g)(1)-(2); *Kemmerly*, 319 Kan. at 101. And no due process violation occurred since Thomas does not contest that the district court made adequate substantive findings to support Thomas' civil commitment. See *In re Ellison*, 305 Kan. at 527.

*The State's interest in the procedure used*

The State's interest in civilly committing an individual is in protecting society from the dangerous tendencies of some mentally ill individuals. *Addington*, 441 U.S. at 426. This factor favors the State.

*We find no structural error*

A structural error is something so pervasive that it defies typical harmless error analysis. *State v. Johnson*, 310 Kan. 909, 913, 453 P.3d 281 (2019) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 [1991]). Such errors are "'structural defects in the constitution of the trial mechanism,'" affecting the "'entire conduct of the trial from beginning to end.'" 310 Kan. at 913. In the criminal context, these errors prevent the district court from "serving its basic function of determining guilt or innocence and deprive defendants of 'basic protections.'" 310 Kan. at 913-14 (citing *Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 [1999]). These errors require instantaneous reversal because they make the trial "'fundamentally unfair.'" 310 Kan. at 914.

The United States Supreme Court has identified a limited situational set of violations to constitutional rights "'so basic to a fair trial that their infraction can never be treated as harmless error.'" *State v. Cantu*, 318 Kan. 759, 769, 547 P.3d 477 (2024)

11

(quoting *Chapman v. California*, 386 U.S. 18, 23-24, n.8, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]). Those include: (1) the total deprivation of counsel; (2) the lack of an impartial trial judge; (3) the denial of the right to self-representation; (4) the violation of the right to a public trial; (5) the erroneous reasonable-doubt instruction; (6) the unlawful exclusion of members of the defendant's race from a grand jury; and (7) the introduction of a coerced confession. *Cantu*, 318 Kan. at 769; *Johnson*, 310 Kan. at 914.

None of the *Cantu* scenarios are present in this case. There was never a total deprivation of counsel or the denial of self-representation as two separate attorneys were appointed. It was Thomas who knowingly and voluntarily chose to represent himself.

We conclude no structural error occurred here that would warrant reversal. Thomas received the requisite level of due process owed him, and he fails to show that the district court abused its discretion by not appointing standby counsel or deciding to hold the KSVPA proceeding in absentia. See K.S.A. 59-29a05(g)(1)-(2); *Kemmerly*, 319 Kan. at 99, 101.

*The district court properly accepted Thomas' waiver of his right to counsel*

Next, Thomas argues that the district court improperly accepted an inadequate waiver of counsel.

But the record reflects Thomas knowingly and voluntarily waived his right to counsel. Thomas continuously waived his right to counsel at multiple hearings, and he was informed by the district court about the dangers and pitfalls of doing so at every turn.

12

*Standard of review*

Appellate courts exercise unlimited review over interrelated rights to counsel and self-representation. *State v. Allen*, 62 Kan. App. 2d 802, 808, 522 P.3d 355 (2022). First, a district court's findings on the waiver of counsel are reviewed for substantial competent evidence. 62 Kan. App. 2d at 808. Then, "the State has the burden of showing that an accused was advised of his or her right to counsel and that their waiver of counsel was knowingly and intelligently made." 62 Kan. App. 2d at 808.

Additionally, the legal question of whether a defendant is competent to represent themselves is reviewed de novo while the question of fact supporting these conclusions of law is reviewed for abuse of discretion. *State v. Burden*, 311 Kan. 859, 866-67, 467 P.3d 495 (2020); *In re Care & Treatment of Cone*, 309 Kan. 321, 325, 435 P.3d 45 (2019). "'A district court abuses its discretion when (1) no reasonable person would have taken the view adopted by the district court; (2) the judicial action is based on an error of law; or (3) the judicial action is based on an error of fact.'" *Kemmerly*, 319 Kan. at 99. The burden of establishing the abuse of discretion rests with the party alleging error. 319 Kan. at 99.

*KSVPA and the Sixth Amendment*

The Sixth Amendment to the United States Constitution guarantees defendants the right to assistance of counsel in all criminal prosecutions. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). Individuals who are indigent have the statutory right to have counsel appointed for them in KSVPA civil proceedings. K.S.A. 59-29a06(b). Although neither the United States nor the Kansas Constitutions explicitly guarantee a right to self-representation, the right to do so has long been implied from the language of the Sixth Amendment. See *Faretta*, 422 U.S. at 821. Exercising that right requires a knowing and voluntary waiver. 422 U.S. at 835.

13

District courts do not use a specific checklist to determine whether a waiver of counsel was both knowingly and intelligently made. Such an assessment is made on the whole record rather than a singular interaction. *Kemmerly*, 319 Kan. at 97-98. To make said assessment, our Supreme Court utilizes a three-step framework to conclude whether the defendant's waiver is both knowing and intelligent. *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020). That analysis includes: (1) the district court must advise the defendant of their right to counsel; (2) the district court must analyze whether the defendant possesses both the intelligence and capacity to appreciate the consequences of their decision; and (3) the district court must ascertain whether the defendant comprehends the charges, proceedings, punishment, and the necessary facts for a broad understanding of the case. 311 Kan. at 863.

*The district court advised Thomas of his right to counsel.*

There is no particular inquiry or advisement that must occur before a defendant is allowed to proceed self-represented by the district court. *State v. Green*, 320 Kan. 539, 556, 570 P.3d 1189 (2025). But to satisfy the first prong of the three-step analysis, a defendant must "be made aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. This is essential to establish whether an individual has made a knowing and intelligent waiver of the right to counsel. *Allen*, 62 Kan. App. 2d at 808. And the determination of whether the right to counsel was adequately waived depends on "an examination of the circumstances in each case." *Green*, 320 Kan. at 556 (citing *Burden*, 311 Kan. at 864).

In the event of a deficiency, the waiver may still be valid if the facts and circumstances show that the defendant understood the complications with pro se representation and the right to counsel at the time of waiver. 320 Kan. at 556 (citing *United States v. Hamett*, 961 F.3d 1249, 1256 [10th Cir. 2020]).

14

The district court should also "assure the defendant appreciates the consequences of waiving representation by counsel . . . [and] the court [should] explain that the defendant will be held to the same standards as an attorney; that the judge will not assist in or provide advice about presenting a defense." *Burden*, 311 Kan. at 864. And it should explain "that it is advisable to have an attorney because many trial techniques, evidence rules, and the presentation of defenses require specialized training and knowledge." 311 Kan. at 864.

Here, the district court followed the exact blueprint that the Kansas Supreme Court laid out in *Burden* for advising Thomas about his right to counsel. See 311 Kan. at 864. Prior to the colloquy, the district court took mitigating steps to advise him of both the benefits and burdens of proceeding self-represented. This included informing him that he would be held to the same standard as an attorney if Thomas planned to represent himself. The district court once again confirmed that Thomas' intention was to proceed self-represented at the pretrial hearing. At that same hearing the district court advised Thomas—again—that he would be held to the same standards as attorneys; that he would not be given any assistance; that any issues he did not raise would be lost; and that the district court could still appoint him counsel. Thomas even signed a letter acknowledging that he was advised about the benefits of having representation, but that he wished to represent himself.

Consequently, the district court both properly inquired and advised Thomas of the burdens of self-representation. See *Green*, 320 Kan. at 556; *Burden*, 311 Kan. at 864.

*Thomas possessed both the intelligence and competence to appreciate the consequences of his decisions.*

When looking at an individual's "'competence to plead guilty or to waive the right to counsel, [the test] must be measured by a standard that is higher than (or even different

15

from)' the standard for determining competence to stand trial." *Burden*, 311 Kan. at 864 (quoting *Godinez v. Moran*, 509 U.S. 389, 399-400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 [1993]). So, to satisfy the second prong, the district court must find both that a defendant is competent to stand trial and that their waiver of counsel was knowingly and voluntarily done. 311 Kan. at 864. The United States Supreme Court has also clarified that this is not a "'heightened standard of competence.'" 311 Kan. at 865 (quoting *Godinez*, 509 U.S. at 400-01). Moreover, in determining whether a person has made a knowing and intelligent waiver of the right to counsel, a district court must inform the defendant of their rights alongside the potential dangers of self-representation. *Allen*, 62 Kan. App. 2d at 808.

Mental competency is determined by "'whether [the defendant] has sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding—and whether [they have] a rational as well as factual understanding of the proceedings against [themselves]." *Burden*, 311 Kan. at 862 (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 [1960]).

However, there is a difference between a defendant's mental and technical competency to act as their own attorney. 311 Kan. at 865. A "defendant's 'technical legal knowledge' is 'not relevant' to the determination whether [they are] competent to waive [their] right to counsel." *Godinez*, 509 U.S. at 400. Technical legal knowledge involves a defendant's ability to handle trial alongside presenting their defense. *Burden*, 311 Kan. at 865. And "[a district] court may not measure a defendant's competence to waive his or her right to counsel by evaluating the defendant's 'technical legal knowledge.'" *Kemmerly*, 319 Kan. at 97 (quoting *State v. Jones*, 290 Kan. 373, 376-77, 228 P.3d 394 [2010]).

Early in this case, the district court determined that Thomas was competent to represent himself and allowed his second appointed attorney to withdraw. Still, even if the district court had not explicitly found that Thomas was competent to represent himself, the record shows that Thomas was able to consult with both of his previous

16

attorneys. And he understood that he did not like or support each of their individual strategies to represent him. This eventually led Thomas to represent himself. Thomas made the affirmative decision to waive his right to counsel.

We have no difficulty finding Thomas had the present ability to consult with his lawyer alongside a rational degree of understanding about the proceedings against him. See *Burden*, 311 Kan. at 862.

*Thomas has a broad understanding of the case against him.*

The third prong asks the district court to inquire and ascertain whether the individual understands "the nature of the charges, the significance of the proceedings, the range of potential punishments and any essential facts" necessary to understand the case. *Allen*, 62 Kan. App. 2d at 809.

Thomas argues that he did not have a broad understanding of the case against him because the district court neglected to explain the burdens of self-representation in layman's terms. Not so. The district court went to great lengths to properly advise Thomas of the burdens associated with self-representation on multiple occasions. See *Burden*, 311 Kan. at 864. The record also demonstrates that Thomas filed his motion to proceed self-represented after becoming increasingly frustrated with the representation of his second court appointed attorney. He later acknowledged that he was waiving his right to counsel on two separate and distinct occasions. Thomas even confirmed the nature of his situation by signing a written waiver of his right to counsel.

Similarly, Thomas appears to have made all necessary preparations for trial and was ready to represent himself. And even when Thomas informed the court that he would not show up for his trial, the district court continued to remind him of the rights that he

17

was giving up. Thomas clearly communicated that he understood and still affirmatively chose not to attend.

Substantial competent evidence supports a knowing and voluntary waiver of counsel in this case. The record is clear: the district court properly advised Thomas of the burdens of self-representation; Thomas had the intelligence and competence to appreciate the consequences of his decision; and Thomas had a broad comprehension about the nature of his case. See *Burden*, 311 Kan. at 863; *Allen*, 62 Kan. App. 2d at 808.

Thomas also fails to show that the district court abused its discretion through any error of fact or law, or by arbitrarily finding that he lacked the mental competency to knowingly and voluntarily waive his right to counsel. See *Kemmerly*, 319 Kan. at 99.

Thomas was given every opportunity and consideration. He was properly advised and made his own knowing and voluntary choices. The results are his own and we find no error here.

Affirmed.